### ARGUED AND DETERMINED

##### IN THE

# SUPREME JUDICIAL COURT

##### OF

# MASSACHUSETTS.

---

INTERNATIONAL TEXTBOOK COMPANY *vs.* CHARLES D. MARTIN.

Suffolk. November 20, 1914. — April 3, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Contract,* Of guaranty, Construction, In writing, Performance and breach, Validity. *Damages,* In contract. *Agency,* Effect of false representations of agent. *Guaranty. Practice, Civil,* Ordering verdict.

A contract in writing between the proprietor of a correspondence school and a subscriber to a scholarship therein contained provisions that the subscriber should pay for his scholarship a certain sum in sixteen instalments of a certain amount each, "the first instalment to be paid at the time of the signing of the subscription" and the others "within each and every period of four weeks hereafter until said price is paid in full," and also that "the price" to be paid for the scholarship included all charges for instruction in a certain subject until the subscriber was "qualified to receive a diploma or certificate of proficiency, provided" he completed "said course within five years from the date" of the contract, that the subscription should "not be subject to cancellation" and that the proprietor of the school should "not be required to refund any part of the money paid for said scholarship." Within five months from the date of the contract, the subscriber stopped studying and refused to make any further payments, and the proprietor of the school, after the date when the last instalment was to have been paid, brought an action to recover the amount of all unpaid instalments. *Held,* that the agreement of the subscriber to pay the stipulated price for a scholarship was an independent promise and that therefore the proprietor of the school was entitled to recover the amount of all unpaid instalments and was not limited to

a recovery merely of the damages sustained by reason of the subscriber's breach of the contract.

Where one in writing guarantees the payment of the price for a scholarship agreed by another person to be paid "in accordance with the terms of the within subscription," the contract of subscription is incorporated into the contract of guaranty and, if the contract of subscription contains a provision, "Do not sign this subscription without reading it. It is subject to acceptance by the Company . . . and agents are not authorized to change its conditions," the guarantor, in an action against him after default by the subscriber, cannot rely on the defence that the subscriber was induced to sign the contract by false and fraudulent misrepresentations by an agent as to the meaning of a certain provision of the contract.

Where, at the trial of an action upon a guaranty in writing, the defendant admits the execution of the agreement of guaranty and all the defences offered by the defendant are as a matter of law untenable and there is no question as to the amount due under the contract, it is proper to order a verdict for the plaintiff.

CONTRACT upon an agreement in writing whereby the defendant guaranteed the payment by his son to the plaintiff of sums of money agreed by the son to be paid according to the provisions of an agreement as to a scholarship. Writ in the Municipal Court of the City of Boston dated January 5, 1912.

On appeal to the Superior Court, the case was tried before *Hitchcock*, J. The material evidence is described in the opinion. At the close of the evidence, the judge ordered a verdict for the plaintiff in the sum of $57.67; and the defendant alleged exceptions.

*J. F. Gadsby*, for the defendant.

*C. E. Lawrence*, for the plaintiff.

LORING, J. By the written agreement between the plaintiff and the defendant's son, the son subscribed "for a Scholarship in the International Correspondence Schools, covering a Course of Correspondence Instruction in Telephone Engineering," and he promised to "Pay for said Scholarship the sum of" $78.40, in instalments of $5 each, the first instalment to be paid at the time of signing the subscription and the remaining instalments "within each and every period of four weeks hereafter until said price is paid in full." It was further agreed that in case of default in the payment of any one of said instalments when due and payable the whole of the amount remaining unpaid should thereupon at the option of the plaintiff become due and payable. The contract contained these further provisions: "It is agreed as

follows: First: That the price hereinafter agreed to be paid for said Scholarship shall include: (a) All charge for instruction in all subjects of the course for which said Scholarship calls until I am qualified to receive a Diploma or Certificate of Proficiency, provided I complete said Course within five years from the date hereof. . . . Fourth: That this Subscription, when accepted by you, shall not be subject to cancellation, and that you will not be required to refund any part of the money paid for said Scholarship." In addition to the foregoing the following words were printed at the bottom of the contract: "We do not refund money paid for Scholarship."

The defendant guaranteed "the payment to you [the plaintiff] of the price agreed to be paid for the within-mentioned Scholarship in accordance with the terms of the within subscription." Both contracts were dated August 22, 1910.

The son pursued his studies under the plaintiff's instruction for some four months and paid four instalments in addition to that paid when the contract was signed. He then (on or about January 1, 1911) stopped studying and refused to make any further payments. This action on the guaranty was brought on January 5, 1912, to recover the unpaid instalments amounting to $53.40.

The defendant admitted that he signed the contract and that he read it before he signed it. That included the plaintiff's contract with the son, which by the terms of the contract of guaranty was incorporated into the guaranty contract. Two defences were set up: First, that on or about January 1, 1911, when he was not in default in the payment of the instalments due from him, the son elected not to go on with the instruction called for by the contract; and, second, that certain misrepresentations were made by the agent of the plaintiff when the contract was signed by the son.

The first defence is in effect based on the assumption that the contract sued on was a contract to pay $5 a month for instruction to be given to the son by the plaintiff until the sum of $78.40 had been paid, or, if that contention be not sound, that under the circumstances we have stated the plaintiff is not entitled to recover the contract price but is entitled to recover damages only for breach of the contract by the son. The latter

defence is stated in the fourth and fifth rulings asked for by the defendant, and set forth in the footnote.*

It is plain that the contract is not a contract for instruction by the month, to be paid for and furnished until $78.40 should have been paid. By the terms of the contract between the son and the plaintiff, the son subscribed "for a Scholarship in the International Correspondence Schools, covering a Course of Correspondence Instruction in Telephone Engineering," to be given until he was qualified to receive a diploma or certificate of proficiency, provided he completed the course within five years from the date of the agreement. That is to say, the son had five years in which to complete the course and the plaintiff was bound to carry on the instruction agreed to be given for that period, or until the son should be qualified to receive a diploma within that period. The payments to be made by the son were to be made in sixteen instalments (fifteen of which were for the sum of $5 each and the sixteenth for the sum of $3.40), and these instalments were to be paid every four weeks, beginning with the date of the signing of the contract. The case comes within the first rule of Serjeant Williams in his note to *Pordage* v. *Cole*, 1 Saund. 319, 320. That rule is in these words: "If a day be appointed for payment of money, or part of it, or for doing any other act, and the day is to happen, or may happen, before the thing which is the consideration of the money, or other act, is to be performed, an action may be brought for the money, or for not doing such other act before performance; for it appears that the party relied upon his remedy, and did not intend to make the performance a condition precedent." This again was founded upon the judgment of Chief Justice Holt in *Thorp* v. *Thorp*,

* "4. Although the performance of the contract on the part of the plaintiff was prevented by the refusal to perform on the part of Walter G. Martin, subscriber, yet the plaintiff is not entitled to the entire contract price less the amount paid, but only to the amount of damages caused by the breach of contract on the part of the subscriber, Walter G. Martin.

"5. By the terms of the written agreement, the plaintiff had to make expenditures for stamps, typewriting, corrections on papers, etc. The facts as to these expenditures are especially within the knowledge of the plaintiff, but as the plaintiff has not offered the necessary evidence to show what these expenses will amount to, it will be impossible for you to fix the damages and therefore you will find for the defendant."

12 Mod. 455, 461. In other words the promise contained in this contract which the plaintiff now seeks to enforce was an independent, not a dependent, promise.

In case of independent promises the promisor has to perform his promise and, if he does not get what he pays for, his remedy is by a cross action. In the case at bar the plaintiff has been ready and willing at all times to go on with the son's instruction, but the son has refused to study. The plaintiff has not been guilty of any breach of its agreement. Under these circumstances the defendant's contention comes to this: The maker of an independent promise who renounces his right to the thing paid for by him can show that fact in reduction of the sum the promisee is entitled to recover under the independent promise. The case of *International Text-Book Co.* v. *Martin*, 82 Neb. 403, seems in effect to be a decision that there is such a right to reduce the amount to be recovered in such a case. It was there held that the burden was on the defendant to prove the benefit ensuing to the plaintiff by the defendant's renunciation, and in the absence of proof of such a benefit that the sum stipulated for had to be paid.

If that be so ordinarily, or if ordinarily there is a question as to that, it is disposed of in the case at bar by the terms of the contract between the plaintiff and the son, which was guaranteed by the defendant and by reference made part of the contract of guaranty. It is there expressly provided that "this Subscription, when accepted by you [the plaintiff], shall not be subject to cancellation, and that you will not be required to refund any part of the money paid for said Scholarship," and "We [the plaintiff] do not refund money paid for Scholarship."

The direct effect of these two provisions is confined to the return of money paid by the scholar. But indirectly they affect the construction of the contract. If money paid for the "Scholarship" is not to be returned under any circumstances, it is plain that as matter of construction the contract between the plaintiff and the son was a contract by which the son bought a "scholarship," that is to say a right to be instructed in telephone engineering for a period of five years or until he became qualified to receive a diploma before the expiration of that time. He was not bound to study at all if he did not wish to. On the other hand

although he was at liberty to study when he wished at any time during the five years, he was bound to pay for the "Scholarship" in instalments the last of which came due in one year and three months after the signing of the contract. What he paid for was the right to the instruction, and the sum to be paid for that right was to be paid whether the son did or did not exercise his right to be instructed.

The defendant has placed great reliance on *International Text-Book Co.* v. *Schulte,* 151 Mich. 149, 151, *International Text-Book Co.* v. *Jones,* 166 Mich. 86, *International Text-Book Co.* v. *Marvin,* 166 Mich. 660, 668, *International Text-Book Co.* v. *Roberts,* 168 Mich. 501, 506. The doctrine established by the first two of these cases and recognized by the other two is stated in these words in the second case (page 88): "It is the rule in this State that a party to an executory contract may always stop performance by the other party by an explicit direction or renunciation of the contract, and refusal to perform further on his part, and that he is thereafter liable only upon the breach of the contract. The contract price is recoverable only upon the theory of performance, never upon the theory of inability to perform" brought on by the refusal of either party to go on. It was accordingly held in the first two cases in that case that the only sum which could be recovered was the damage proved by the plaintiff; and there being no affirmative proof of damages suffered by the plaintiff in these cases, it was held that the plaintiffs were entitled to nominal damages only. That doubtless is the rule in case of dependent promises. For example, where A agrees to buy of B a chattel and to pay a specified sum for it. If A refuses to go on with the contract before the title to the chattel passes, all that B can recover is damages. See for example *Barrie* v. *Quinby,* 206 Mass. 259. But see in this connection *White* v. *Solomon,* 164 Mass. 516; *National Cash Register Co.* v. *Dehn,* 139 Mich. 406, where it was held that even in case of sales of chattels the rule does not apply in case it is agreed that payment is to be made before the title passes. The case at bar does not come within the rule stated in the Michigan cases because in the contract here in question the promise to pay was an independent promise.

For these reasons we are of opinion that the exceptions taken to the refusal to give the fourth and fifth rulings asked for must

be overruled. This conclusion was reached in *International Text-Book Co.* v. *Anderson*, 179 Mo. App. 631.

The other defence relied on is that the defendant was induced to sign the contract by false and fraudulent misrepresentations made by the plaintiff.

The defendant offered to prove that before he signed the contract he asked the plaintiff's agent this question: "'Suppose my son loses his position and gets another position in another trade so that the lessons in the old trade will be of no benefit to him, must he continue taking lessons in the old trade which will be of no benefit to him, and must I pay for them if he does not?' And the agent answered, 'No. This contract is like an insurance policy. It lapses when you stop. But while you are not required to make any further payment, you will not get your money back,'" and that in confirmation of this statement the agent pointed to the provision in capitals at the bottom of the contract: "We do not refund money paid for Scholarship." The defendant offered to prove that he relied upon this statement, and relying upon it was induced to sign the guaranty. This evidence was excluded and an exception was taken to its exclusion.

There is a provision at the top of the contract signed by the son: "Do not sign this Subscription without reading it. It is subject to acceptance by the Company at Scranton, Pa., and Agents are not authorized to change its conditions." As we have already said, the plaintiff's contract with the son was by reference made part of the contract with the defendant. The contract signed by the defendant is in these words: "I hereby guarantee the payment to you of the price agreed to be paid for the within mentioned Scholarship in accordance with the terms of the within subscription." The provision of the contract with the son that agents were not authorized to change the conditions of the printed blank was binding on him (see for example *Cannon* v. *Burrell*, 193 Mass. 534; *Colonial Development Corp.* v. *Bragdon*, 219 Mass. 170), and by reference was binding upon the defendant. The defendant agreed that the agent was "not authorized to change its [the written contract's] conditions." Whatever the written contract meant, that was the contract and the only contract that the agent was authorized to make in behalf of the plaintiff, and to that fact the defendant had agreed. Under that

agreement of the defendant a representation by the agent as to the meaning of the written contract was not a representation which the agent was authorized to make or upon which the defendant had a right to rely. We have examined all the cases cited by the defendant and find none which requires special notice. The exception to the exclusion of this evidence must be overruled.

The case at bar is one of the few exceptions to the general rule (as to which see *Leary* v. *William G. Webber Co.* 210 Mass. 68, 74), that ordinarily it is not possible as matter of law to direct a verdict in favor of the party who has the burden of proof. In the case at bar the execution of the contract by the defendant was admitted by him, and on the facts there was no question of the amount due. Under these circumstances it was proper to direct a verdict for the plaintiff as matter of law; and the entry must be

*Exceptions overruled.*