Argued November 20, 1929; affirmed February 11; costs taxed February 25; rehearing denied April 8, 1930

FIRST NATIONAL BANK IN SALEM *v.* MORGAN et al.

(284 P. 582, 286 P. 558)

516

*James Burdett* of McMinnville (Senn & Recken of Portland on the brief) for appellants.

*Custer E. Ross* of Salem for respondent.

RAND, J. This is an action to recover upon a promissory note given by defendants to the Cosmopolitan Five Cents to One Dollar Stores, Inc., in payment for shares of stock of the corporation which were not to be issued or delivered until the note was paid. The action was brought by the First National bank in Salem, which took the note as collateral security for loans made to the original payee. The trial resulted in a directed verdict and judgment in favor of the bank from which judgment defendants have appealed.

The note reads as follows:

"995.00 McMinnville, Oregon, Mar. 13, 1925.

One year, after date, without grace, for value received, I agree and promise to pay to the Cosmopolitan Five Cents to One Dollar Stores Inc., a corporation, or order, at its offices in Eugene, Oregon, the sum of Nine Hundred Ninety-five Dollars with interest thereon at the rate of 8 per cent per annum, from date until paid, said note ·to be paid in $——— monthly installments, in advance, together with interest accrued thereon, both interest and principal to be paid at the office of The Cosmopolitan Five Cents to One Dollar Stores, Inc., in Eugene, Oregon; or at any bank in the city of Eugene, State of Oregon, which the said The Cosmopolitan Five Cents to One Dollar Stores, Inc., shall designate in wrting to the maker or makers thereof, said payments to be made in lawful money of the United States of America. Said installment payments, together with the interest, if not paid when they become due and payable, the whole of the principal sum then remaining unpaid, together with interest that shall have accrued thereon, shall forthwith become due and payable at the election of the holder of this note.

And in case suit or action is instituted to collect this note, or any portion thereof, I promise and agree to pay, in addition to the costs and disbursements provided by statute, such additional sum in lawful money

of the United States of America as the court may adjudge reasonable as attorney's fees to be allowed in said suit or action.

This note is given for the payment of Five units of the Cosmopolitan Five Cents to One Dollar Stores, Inc., stock; said units of stock are not to be issued or delivered until this note is paid in full; and then the said unit shares of stock are to be issued and delivered as set forth in a subscription contract of even date, and signed by the maker hereof.

Hector Morgan,<br>
H. E. Morgan.''

The facts in respect to the making and delivery of the note and its transfer to plaintiff are as follows: The payee named in the note was a chain store operator, one of its stores being conducted at Salem. It had an account with and was a borrower of plaintiff bank. One of its methods of obtaining credit was by selling shares of its capital stock, taking notes therefor and transferring them as collateral security for loans. This method was followed in the instant case. Defendants were the owners and operators of trucks and had been engaged in hauling freight for payee and others. At the time the note was executed a written contract was also entered into by payee and defendants. It provided that the defendants should purchase shares of stock and give this note in payment therefor; that the note should be paid wholly by services to be performed by defendants in hauling freight for the payee; and that if the note was not paid within one year from the date thereof, it might at the option of the payee be canceled upon giving 30 days' notice thereof to the makers. This, in substance, is the contract which is mentioned and referred to in the note as the ''subscription contract.''

Upon the trial this contract was proved and offered in evidence but on objection of plaintiff was not received. It was, however, attached to the record as an exhibit offered and rejected. Defendants also offered to prove by evidence, partly in writing and partly in parol, that the payee named in the note had, pursuant to said contract, actually canceled defendants' subscription for the stock and given notice of such cancelation to the makers of the note. This offered testimony was also rejected by the court on plaintiff's objection thereto. The defense set up in the answer was a total failure of consideration and that the bank took the note with notice of such failure and hence was not a holder in due course. Defendants sought to establish this defense upon the trial but were not permitted to do so, the trial court taking the view that the note was a negotiable instrument and had been acquired by plaintiff for value and before maturity without notice of any infirmity in the note or of any defect in the title of the payee. On its face the note shows that the sale and delivery of shares of stock was the whole consideration for which it had been given and that the certificates therefor were not to be issued or delivered until the note had been paid. The complaint alleged that certificates of stock had been issued and delivered to defendants but this was denied by the answer and, upon the trial, it was established that the certificates had not been issued or delivered and that the corporation which was to issue them had become insolvent and gone out of business and hence that there had been a total failure of consideration of the note. The complaint admitted part payment of the note and the evidence showed that these payments were charges for services which had been performed by defendants in hauling freight for the payee, the amounts of which had been credited

by the payee on the back of the note. From this it will be seen that, if plaintiff is permitted to recover the unpaid balance of the note, defendants, without receiving any consideration therefor, will lose the value of the services which they have performed for the payee as well as being compelled to pay the unpaid part of the note.

It is contended on behalf of the defendants that the note is not a negotiable instrument by reason of the provisions contained in the last paragraph of the note and that, if the note is negotiable, the bank is not a holder in due course because it acquired the note as collateral security for a loan. The rule is that one taking a negotiable promissory note as collateral for a loan, under circumstances which would make the transferee a holder in due course if the note had been purchased outright, is a holder in due course. 1 Daniel on Neg. Inst. (6th Ed.), § 781b. Under our statute, a holder in due course is one who takes an instrument, complete and regular upon its face, before maturity in good faith for value and without notice that it had been previously dishonored, if such was the fact, or of any infirmity in the instrument or defect in the title of the person negotiating it. Section 7844, Or. L. The bank acquired the note before maturity and for value and without notice of any facts which were not disclosed on the face of the note itself and hence is a holder in due course if the note is a negotiable instrument. The last paragraph contained in the note states that it is given in payment for stock which is not to be issued or delivered until the note is paid and is then to be issued and delivered "as set forth in a subscription contract of even date, and signed by the maker hereof." This shows that the sole consideration for the note was the issuance and delivery of the stock and that the stock

was to be issued and delivered when the note was paid. The general rule seems to be that, whenever a promissory note contains a reference to some extrinsic contract in such a way as to make the note subject to the terms of the contract as distinguished from a reference importing merely that the extrinsic agreement was the origin of the transaction or constitutes the consideration of the note, the negotiability of the paper is destroyed. See note in 30 L. R. A. (N. S.) 40. The statement contained in this note was more than a mere reference to the consideration of the note or to the origin of the transaction. If it had merely stated that it had been given for the sale and delivery of stock, it would have been a negotiable instrument, but it went further than that. It disclosed not only the consideration for which the note had been given but also the fact that the consideration had not been executed and it contained a promise that when the note was paid the stock should then be issued and delivered, and this, it seems to us, destroyed the negotiability of the note and made the note evidence of a special contract for the sale and delivery of stock and imparted notice to the bank that if it purchased the note there would be a total failure of consideration unless certificates were issued and delivered for the stock at the time the note was paid.

■ The bank contends that the promise to pay the note and the promise to issue and deliver the stock are independent covenants and that performance of one is not dependent upon performance of the other. We think this contention can not be sustained. As said by Mr. Justice Bean in *Burkhart v. Hart,* 36 Or. 586, 60 P. 205:

"* * * in the absence of very clear indications to the contrary, promises, each of which forms the whole consideration for the other, will not be held to

be independent of one another, and a failure of one party to perform on his part will excuse the other from liability to perform."

In that case, as in this, the plaintiff in the action was the assignee of a promissory note. There the note had been given in consideration of the payee's promise to dedicate certain property in front of defendant's lot, which dedication had not been made, and the plaintiff in the action took the note with knowledge of the payee's failure to perform. In this case the bank took the note without any notice except such as was disclosed by the note itself. The note involved here disclosed on its face that the whole consideration for the makers' promise to pay the note was the issuance and delivery of stock which was not to be made until the note was paid. The principle announced in *Burkhart v. Hart, supra,* was applied and followed by this court in *Johnson v. Parshley,* 59 Or. 447 (117 P. 661), and in *Pennings v. Giboni,* 86 Or. 110 (167 P. 598). We think, both on principle and under said decisions, that these two promises were not independent covenants but were dependent covenants and that payment of the note depended upon the issuance and delivery of the stock and that these promises were to be performed concurrently and that the bank took the note with notice of that fact.

■ The agreement to issue and deliver the shares of stock upon payment of the note did not relate to the manner in which the promise to pay money may be enforced but was a substantive agreement that when the note was paid the stock also should then be delivered; that, if the payee should insist upon the performance by payment, the obligation of the makers to pay was conditional upon the payee's obligation to issue

and deliver the stock, and that, since this condition appears upon the face of the note, it was notice to the bank that the note was not an unconditional promise to pay. The rule applicable under the facts is stated in 7 Cyc. 947, as follows:

"If the purchaser knows at the time of his purchase that the consideration for which the note was given has failed, if he is informed that the validity of the consideration is a question yet to be tested, or if he knows or has legal constructive notice that the consideration is illegal, he can not be considered a bona fide holder. But a failure of the consideration in whole or in part after a bona fide transfer does not affect the character of the purchaser, although he had full knowledge of the original consideration for which the note was given."

See also 4 A. & E., Enc. of Law, 305. As said in 1 Parsons on Contracts (9th Ed.), p. 500:

"When the consideration appears to be valuable and sufficient, but turns out to be wholly false or a mere nullity, or where it may have been actually good, but before any part of the contract has been performed by either party, and before any benefit has been derived from it to the party paying or depositing money for such consideration, the consideration wholly fails, there a promise resting on this consideration is no longer obligatory, and the party paying or depositing money upon it can recover it back."

In *Shedden v. Heard,* 110 Ga. 461 (35 S. E. 707), a suit on a promissory note given in payment of a first premium on a policy of life insurance not issued, the court said:

"It was contended by counsel for plaintiff, that the fact plaintiff knew, when this note was purchased, for what consideration it was given, can not be considered as charging him with any notice of a failure of that consideration. This is unquestionably true as a general

principle of law; but we do not think it is applicable to this case. It appears from the record that the plaintiff, when he purchased this note, not only knew of its consideration, but also knew that at that time the policy applied for, and for which the note was given, had not been delivered to the maker; for the plaintiff himself forwarded the money to the company in order to get that policy. We think, therefore, with a knowledge of these facts, the plaintiff, when he purchased the note, manifestly incurred the risk of the defendant's not receiving the policy for which he applied; and if the company had not sent to the applicant such a policy, but one entirely different, the plaintiff in this case could not have pleaded that he was an innocent holder as against this defense. For instance, if one should purchase a negotiable note before maturity for value, and at the time of the purchase knew not only its consideration, but further knew the fact that the article or thing of value, for which the note was given, had not been delivered to the maker, such a purchaser would necessarily incur the risk of a failure of consideration of the note by a possible non-delivery of the thing purchased."

 Prior to the enactment of the uniform negotiable instruments act, the rule was, and we think it has not been changed by the statute, that the negotiability of an instrument is not impaired by recitals or statements upon its face which state the consideration upon which it is made provided it imposes no other liability upon any party thereto than that for the payment of a sum therein specified. 1 Daniel on Neg. Inst., § 51a. And that, for a note to be negotiable it must purport to be only for the payment of money and, if any other agreement of a different character be engrafted upon it, it becomes a special contract, clogged and involved with other matters and loses the character of a negotiable instrument. 1 Daniel on Neg. Inst. (6th Ed.), §§ 59 and 60. "There can be no doubt," says Professor

Williston, "that a mere statement of executed consideration for the instrument does not impair its negotiability. But if the payment of a note is in terms conditional on the performance of an executory promise or requested act in consideration of which the note was given the note seems clearly non-negotiable." 2 Williston on Contracts (1920 Ed.), § 1137. In this state it has been held that if an indorsee takes a bill with notice of failure of consideration, his right to recover can not be superior to that of his indorser. *Davis v. Wait,* 12 Or. 425 (8 P. 356). And where the transferee of a note has notice of any fact which would impeach it in the hands of the original payee, the note is not transferred in good faith, so as to protect it under the negotiable instruments act, and the transferee takes the note subject to all defenses which could be made against the original payee if he were still the holder of it.

■ Not only did the note on its face disclose to the bank a failure of consideration but it also disclosed that the note itself did not embody the whole agreement. It disclosed that there was an extrinsic agreement which the bank would have to consult in order to ascertain its possible effects upon the obligation imported by the note. If the bank had consulted the agreement referred to in the note, it would have found that the agreement was that the note was not to be paid in money but in services. The parties had a right to enter into that kind of agreement and, when entered into, the agreement was valid and enforceable according to its terms in an action between the original parties, or one taking the instrument with notice. If the original payee of the note had brought action against the makers, the makers would have had a good defense and they have the same defense as against the bank since

the bank is charged with notice of the agreement by the reference to it contained in the note and, hence, whether it did or did not consult the extrinsic agreement, it bought the note with notice that there was such an agreement, and ordinary prudence would seem to dictate that the bank should consult the extrinsic agreement before purchasing the note. Of course, the provisions of the negotiable instruments act have no application to a non-negotiable chose in action. Every assignee of a non-negotiable chose in action stands in the shoes of his assignor and is in no better position than his assignor when he attempts to enforce it. In the hands of the assignee, it is subject to the same defenses that could be made against it in an action brought by the assignor. For these reasons we are compelled to hold that the promissory note sued on was not a negotiable instrument, because not containing an unconditional promise to pay a sum certain in money.

Defendants moved for a directed verdict. Instead of granting the motion, the court directed a verdict in favor of plaintiff. Defendants' motion should have been granted. The judgment, therefore, will be reversed and the cause will be remanded with directions to enter a judgment for defendants.

Coshow, C. J., McBride and Rossman, JJ., concur.

---

Rehearing denied April 8, 1930

On Petition for Rehearing

(286 P. 558)

RAND, J. Plaintiff claims that this court erred in holding that the following provision contained in the note, to wit: ''said units of stock are not to be issued or delivered until this note is paid in full; and then the

said unit shares of stock are to be issued and delivered,'' were dependent promises, and also in holding that the bank, in the absence of performance upon its part, could not maintain this action without first alleging and offering to prove that it was able and had offered to deliver the stock to defendants. In support of this contention, it cites *Hawley v. Bingham,* 6 Or. 76, and contends that the doctrine there announced was applicable to these mutual promises and that in effect that case has been overruled by what we hold to be the law in the instant case.

■ Whether covenants are dependent or independent is a question of the intention of the parties as deduced from the terms of the contract. If the parties intend that performance by each of them is in no way conditioned upon performance by the other, the covenants are independent, but if they intend performance by one to be conditioned upon performance by the other, the covenants are mutually dependent: 5 Page on Contracts, §§ 2941-2951, et seq.; Williston on Contracts, § 824; *Burkhart v. Hart,* 36 Or. 586 (60 P. 205).

■ In determining whether the parties in the instant case intended that payment of the entire amount due upon the note was to be conditional upon the delivery of the stock at the time the note was paid, we must consider not only the words of the particular clause quoted above but also the language of the whole contract as well as the nature of the act required and the subject-matter to which it relates. When so considered, it will be seen that the mutual covenants go to the whole consideration on both sides—the payment of a certain definite sum of money by one side and the issuance and delivery of a specified number of shares of stock by the other. While there is no fixed definite rule of law by

which the intention in all cases can be determined, yet we must remember, as stated by Professor Williston, that, since concurrent conditions protect both parties, courts endeavor so far as is not inconsistent with the expressed intention to construe performances as concurrent conditions. 2 Williston on Contracts, § 835. See also 5 Page on Contracts, § 2948. The necessity of construing these covenants as concurrent in order to avoid gross injustice in the instant case is apparent for without a delivery of the stock the whole consideration for which the note was given must of necessity fail. While it is true that it is the intention which the parties had at the time the contract was entered into and not an intention which later arose because of subsequent events, yet it is very apparent that the intention, as expressed in the contract, was that upon payment of the note the stock was to be delivered at and when the note was paid. In this action the bank is seeking to enforce payment of the note without delivering or offering to deliver the stock. If successful in the action, the bank will recover the entire consideration without defendants receiving anything in exchange therefor.

Before referring to the Oregon cases upon this subject, which we think are in thorough accord with the rules above stated, we will refer to other authorities upon this question. Under the very early English common-law decisions covenants contained in the contract were held to be independent and could be enforced in many instances where the party seeking to enforce them was himself in default. Those decisions are no longer the law in England, nor have they ever been followed, so far as we know, in this country; certainly not in this state and, of course, they are not the rule of decision in this case. Certain rules in respect to dependent covenants were formulated and deduced from pre-

vious English decisions by Lord Mansfield in *Kingston v. Preston*, 2 Doug. 689, and *Boone v. Eyre*, 1 Hen. Bl. 273n, and later by Serjeant Williams in a note to *Pordage v. Cole*, 1 Wm. Saund. 319L, in which the law applicable to dependent conditions became well established in England. Serjeant Williams' rules were adopted by the courts and were thereby given the force and effect of judicial authority. The fourth and fifth rules announced by Serjeant Williams are as follows:

"4. But where the mutual covenants go to the whole consideration on both sides, they are mutual conditions, and performance must be averred. 5. Where two acts are to be done at the same time, as, where A covenants to convey an estate to B on such a day, and in consideration thereof B covenants to pay A a sum of money on the same day, neither can maintain an action without showing performance of, or an offer to perform his part, though it is not certain which of them is obliged to do the first act; and this particularly applies to all cases of sale."

These rules were recognized as authoritative statements of the law by Mr. Justice BEAN in the *Burkhart* case, where he said:

"* * * The old decisions turned upon a technical construction of the language used, but the modern doctrine is that a contract should be construed according to the meaning and intention of the parties. It is unnecessary for us to make special reference to the several rules upon the subject or the various decisions of the courts. It is sufficient to say that 'in the absence of very clear indications to the contrary, promises, each of which forms the whole consideration for the other, will not be held to be independent of one another, and a failure of one party to perform on his part will excuse the other from liability to perform': Clark, Cont. 656. Applying this principle to the case in hand, it is quite clear the court committed no error in holding that the

nonperformance of its contract by the trust company within a reasonable time was a defense to an action upon the note. The whole consideration for the note was, as alleged, the performance by the company of its agreement, and if it failed to do so. the consideration necessarily failed.''

The Burkhart case was cited and followed in *Pennings v. Giboni,* 86 Or. 110 (167 P. 598), and again in *Taylor v. Tripp,* 97 Or. 611 (191 P. 1054). The same doctrine is recognized and followed by the courts as well as the text-writers. See 2 Williston on Contracts, §§ 813, 835, and 5 Page on Contracts, §§ 2941-2951 et seq., and the cases cited therein. It now seems to be the settled law, as stated by Professor Williston, that ''the presumption in bilateral agreements, unless some reason can be shown to the contrary, is that the promises are dependent,'' and that this doctrine of implied dependency, where no intention is expressed, rests solely on its fairness, which is, he says ''a quite sufficent basis.'' In section 813, Professor Williston says:

''* * * When A and B promise respectively to buy and sell stock in a corporation on May 1, the natural meaning of such language in the year 1500 may have been that the promises were independent. Four hundred years later that is not the natural construction. The customary methods of doing business of the kind by concurrently conditional performances are understood by the parties, and, therefore, determine the meaning of their language. But whether or not it is possible to imply a condition as matter of fact by ordinary rules of construction, the general and far-reaching principle of justice should also be observed that performance on one side should not be required, if the other party is materially in default in the performance which he was to give in exchange.''

Again, he says in section 835:

"Since concurrent conditions protect both parties, courts endeavor, so far as is not inconsistent with the expressed intention of the parties, to construe performances of mutual promises as concurrent conditions. Therefore, not only, when no time is mentioned for either performance but also, where each party promises to perform his side of a bilateral contract 'on or before' a stated day, though the contract does not state that each shall perform on the same day, concurrent conditions are implied, if the performances in their nature are capable of being performed concurrently. * * *."

The case of *Hawley v. Bingham,* supra, relied upon by plaintiff, if it means what plaintiff contends for it, is not applicable to the mutual promises involved here. In fact, it is impossible to state with any definiteness what the facts in that case were. There the question arose upon an objection to the sufficiency of the complaint. The note sued on there contained a clause which recited that the sole consideration was an agreement and promise that, upon payment of the note, the payees will sell and transfer to the maker a machine which the payees "have this day entrusted to the care of the undersigned." Whether this was an agreement merely to execute some assurance of title to a machine already in the possession of the defendant it is impossible to say. Referring to this case in the *Burkhart* case, Mr. Justice BEAN said:

"In *Hawley v. Bingham,* 6 Or. 76, the consideration for the note was a mere agreement and promise of the payee;"

We think the facts in this case clearly bring it within the rule announced in the *Burkhart, Pennings and Taylor* cases and that the doctrine there announced is con-

trolling upon this question, and that, as said by Professor Williston, which we will again quote:

"When A and B promise respectively to buy and sell stock in a corporation on May 1, the natural meaning of such language in the year 1500 may have been that the promises were independent. Four hundred years later that is not the natural construction."

It follows that the petition for rehearing should be denied.

ROSSMAN, J., dissents.