Submitted on motion to dismiss appeal May 21; motion denied May 28; argued on the merits December 5, 1929; affirmed April 8; rehearing denied May 1, 1930

DIBBLE v. DAVID HODES CO., Inc.

(277 P. 820, 286 P. 554)

*Leo Levenson* and *Jaureguy & Tooze,* all of Portland, for appellant.

*Henry Bauer* of Portland for respondent.

COSHOW, C. J. ■ Plaintiff relies on the cases of *Walker v. Fireman's Fund Ins. Co.,* 122 Or. 179 (257 P. 701); *Sitton v. Goodwin,* 119 Or. 74, 79 (248 P. 163); *Tallmadge v. Hooper,* 37 Or. 503 (61 P. 349, 1127). Plaintiff's argument is based upon a technical construction of the word "within" as used in section 554, Or. L. The motion is ruled by *White v. East Side Mill Co.,* 84 Or. 224 (161 P. 969, 164 P. 736); *Vincent v. First Nat. Bank,* 76 Or. 579 (143 P. 1100, 149 P. 938); *Wolf v. City Railway Co.,* 50 Or. 64 (85 P. 620, 91 P. 460, 15 Ann. Cas. 1181); *French v. C. F. & T. Co.,* 116 Or. 532 (241 P. 1010). In those cases the word "within" is given the meaning "not beyond." The policy of the law is to liberally construe the statutes giving a defeated litigant an appeal to this court. There is sound reason for construing the word "within" as meaning "not beyond 30 days from the date the appeal is perfected." The case of *Walker v. Fireman's Fund Ins. Co.* is consistent with this holding. The particular point here involved was not raised in that case. In that case the particular point in controversy was the sufficiency of the transcript of appeal to confer jurisdiction on this court. The

statute was properly construed in the Walker case. The order extending the time must be made before the appellant is in default. The word "within" when considered in the light of the context means "not beyond 30 days from the time the appeal is perfected." The order extending the time in which to file the transcript was made after the entry of the judgment, the notice of the appeal and the filing of the undertaking were served and filed and for that reason was not premature. Probably the better practice would be to wait until time has expired for making objections to the undertaking, but it would be too narrow and technical to hold the court did not acquire jurisdiction when no exceptions were taken to the surety and nothing was done to in any way alter the judgment below. The cases of *Graf v. Pearcy*, 76 Or. 488 (149 P. 532); *Cook v. City of Albina*, 20 Or. 190 (25 P. 386), in as far as the same are inconsistent with this opinion, are overruled.

Plaintiff tenders another undertaking, which relieves us of the necessity of passing upon the points raised as to the insufficiency of the original undertaking given by defendant. Defendant may file the amended undertaking tendered under the provisions of section 550, subd. (4), Or. L. The motion to dismiss the appeal is denied.

Brown, J., did not participate in this opinion.

ON THE MERITS
(286 P. 554)

*Nicholas Jaureguy* and *Leo Levenson,* both of Portland (Jaureguy & Tooze of Portland on the brief), for appellant.

*Henry Bauer* of Portland for respondent.

BEAN, J. By the contract the sign company obligated itself to construct fifty intricate two-way, cut-out road signs which were expensive to manufacture and of use only to the purchaser, which, when paid for, were to become the property of the defendant. It appears that the cost of making these signs was about $35 each, or a total of about $1,750, while the cost of maintaining and keeping up the signs, stipulated in the contract, amounted to about 20 per cent of the contract price to be paid. The contract contained the provision that "the signing of this contract shall constitute an order from the second party for the signs above mentioned, which cannot be countermanded without the first party's written consent," and also an acceleration clause in case of default in the payment of the install-

ments when due. It is contended by defendant, in substance, that plaintiff could not recover in an action on the contract but was relegated to an action for damages for breach of the contract, and in no event would defendant be liable for more than $100.

In a contract where the covenant to pay the purchase price is an independent covenant, the purchase price may be recovered even after repudiation by the buyer: *Loveland v. Warner,* 103 Or. 638 (204 P. 622, 206 P. 298); *International Textbook Co. v. Martin,* 221 Mass. 1 (108 N. E. 469). A covenant to pay the purchase price is held to be independent of performance in the following instances: (1) Where the purchase price, by the terms of the contract, becomes due or may become due before performance by the seller is completed: 13 C. J. 570; *Krebs Hop Co. v. Livesley,* 51 Or. 527 (92 P. 1034); *Brenon Mfg. Co. v. Martin,* 27 N. M. 74 (196 P. 172). (2) Where the terms of the payment of the purchase price, in accordance with the contract, may be accelerated: *Alexander Hamilton Institute v. Hart,* 180 Wis. 90 (192 N. W. 481). The seller may recover the purchase price after repudiation by the buyer if the contract is to manufacture special articles for the buyer and he has substantially completed their manufacture: *Edmunds v. Welling,* 57 Or. 103 (110 P. 533); *Alabama Grocery Co. v. Hammond,* 285 Fed. 723.

The case of *Loveland v. Warner,* supra, is very much in point because the contract there involved is similar to the contract involved in the present case. The court held that the obligation to pay the purchase price was an independent covenant which became absolute when certain advertising matter was delivered, and was independent of performance of further stipulations in the contract. The court, speaking by Mr. Justice BURNETT,

after discussing the principles which distinguish dependent from independent covenants, said:

"We will apply these principles to the contract in question. The first clause is a distinct order for goods mentioned on the back of the contract, 'in payment for which' the defendants delivered the six notes in controversy. This constituted a complete, separate and independent transaction. The promise to pay a certain sum of money absolutely and at all events in consideration of the delivery of the goods, was an independent covenant, practically so characterized by the terms of the contract."

We have in the present case: Precedence of the time of payment before the time of full performance; acceleration provisions in case of default in the payment of any installment; and provisions that the contract is not subject to revocation. The contract is practically a conditional sales contract with the added feature that the seller agreed to keep the signs in repair. These provisions clearly mark the contract as having independent covenants: *Alexander Hamilton Institute v. Hart,* supra. We take from a note in 51 L. R. A. (N. S.) p. 735 at p. 759, the following:

"Although the purchaser refuses to receive goods sold on conditional sale when tendered, if they are appropriated to the contract by the seller, the great weight of authority sustains the right of the latter to recover the purchase price, where the contract contemplates possession by the purchaser before payment, since, by a contract of this character, the purchaser agrees that the payment of the purchase price shall precede the vesting of the title to the property in him."

█ It is a general rule that where a party, bound by an executory contract, repudiates his obligation before the time for performance, the promisee (in the present case the plaintiff) has, according to the great weight

of authority, an option to treat the contract as ended, so far as further performance is concerned, and to maintain an action at once for the damages occasioned by such anticipatory breach: 13 C. J. p. 651, § 725. It is stated in 13 C. J., at page 653, thus:

"Where there has been a renunciation of an executory contract by one party, the other party has a right to elect between the following remedies: (1) To rescind the contract and pursue the remedies based on such a rescission. (2) To treat the contract as still binding and wait until the time arrives for its performance, and at such time to bring an action on the contract for breach. (3) To treat the renunciation as an immediate breach and sue at once for any damages which he may have sustained."

This option or right of election, however, is in favor of the party who has not breached the contract, and the renouncing party cannot force acceptance. The other is not bound to sue for a breach of the contract before the day fixed for performance arrives: 13 C. J. 655, § 730. The promisee, in case the promisor refuses further performance, is not bound to rescind the contract. He may keep it alive and sue upon it or he may adopt a middle course and treat the contract as at an end for the purposes of further performance but is still alive for the purpose of adjusting the rights of the parties as to the breach. In the present case the plaintiff adopted the second remedy named above, and waited until, under the acceleration clause, the payments were due.

The true test, as to whether covenants of a contract are dependent or independent, rests on the intention of the parties, to be determined from the sense of the entire contract rather than from any particular form of expression or the order in which the stipulations

occur in the instrument, the order of time in which the intent of the transaction requires performance being controlling. The intention must be gathered from the contract according to the ordinary rules of construction, on consideration of both its language and subject-matter: 13 C. J. 568, § 539; *First National Bank v. Morgan,* 132 Or. 515 (284 P. 582, 286 P. 558). We take from a note in 13 C. J., page 568, the following:

"The parties have an undoubted right, if they please, to make their covenants dependent or independent throughout, or to make the covenants independent as to one thing and dependent as to another. They have a right to mould their contracts so as to suit their mutual convenience and interests; and when the courts can ascertain their meaning, they are so to construe the contract as to give effect to that meaning, provided the purpose be lawful: *Nesbitt v. McGehee,* 26 Ala. 748, 756, (quot. *McCormick v. Badham,* 191 Ala. 339, 343, 67 So. 609)."

Taking the contract in the present case by its four corners, it is plain that it was not intended by the parties that the payment for the manufacture and installation of the signs should not be made until after they had been kept in repair and varnished for three years. The main part of the contract was performed on the part of the plaintiff when the action was commenced and the jury could easily estimate the damage or expense of keeping the signs varnished and in repair and allow the defendant a reduction on the purchase price or contract price, as they did in the present case. The covenant to pay the contract price, we think, was an independent covenant.

There was no error in the court's refusing defendant's motion for a directed verdict or in refusing to

608

render a judgment on the verdicts in favor of the defendant or in not rendering a judgment in favor of the plaintiff for only $100.

It appears that the defendant had one Biermeister take photographs of the fifty signs mentioned in the contract. David Hodes, as a witness for defendant, stated that he did not exactly employ Biermeister, but told him he would refund the cost of the films and would pay for the films if he would take a few snapshots and bring them to the defendant. The pictures referred to were introduced in evidence. The defendant assigns as error the introduction of testimony by plaintiff of the witness Klein to the effect that the photographer Biermeister defaced some of the signs by tearing off panels which, in two or three photographs, showed the same to be lying on the ground near the posts upon which the signs were fastened. Defendant contends that there was not sufficient evidence that Biermeister was an agent of the defendant or authorized to make such defacement of the signs. He was employed by the defendant to take the photographs, which he did. The defendant accepted them and introduced the photographs in evidence showing the defacements. They were taken after the defacement of the signs. By accepting the acts of Biermeister the defendant ratified all of his acts. The right of a principal to ratify unauthorized acts of his agent is subject to the limitation that he must ratify the act entirely or disaffirm it—he cannot accept the benefits and repudiate the obligations: *La Grande National Bank v. Blum,* 27 Or. 215 (41 P. 659); *McLeod v. Despain,* 49 Or. 536, 552 (90 P. 492, 92 P. 1088, 124 Am. St. Rep. 1066, 19 L. R. A. (N. S.) 276); Mechem, Agency, §§ 128, 130, 151. There was no error in admitting such testimony.

After a careful examination of the record we find no error therein.

The judgment of the circuit court is therefore affirmed.

Coshow, C. J., and Belt, J., concur.