Argued October 25; reversed and remanded November 22, 1949

## WALTERS ET AL. *v.* GOTCHER ET UX.

211 P. 2d 733

*Duane Vergeer*, of Portland, argued the cause for appellants. On the briefs were Vergeer & Samuels, of Portland.

*Claude M. Johns, Jr.*, of Portland, argued the cause for respondents. With him on the brief was James Arthur Powers, of Portland.

Before LUSK, Chief Justice, and BELT, BAILEY, HAY, and PAGE, Justices.

BELT, J.

Plaintiffs, on August 30, 1946, commenced a suit to rescind a contract to purchase thirteen acres of land lying adjacent to what is commonly known as the "Columbia Slough" in Multnomah county, Oregon. From a decree dismissing the suit, the plaintiffs have appealed.

The plaintiffs, Hans Walters and his brother Arthur, for several years were engaged in the business of building small and medium-sized boats. During World War II the plaintiffs ceased building operations; but when it was over, they undertook to find a more suitable site for conducting their business. On the 5th day of April, 1946, the plaintiffs entered into a written contract with the defendants to buy—and the defendants agreed to sell—the thirteen-acre tract above mentioned at a price of $7,800.00. Five thousand dollars in cash was paid upon execution of the contract, and the balance of the purchase price, namely, $2,800.00, was to be paid in monthly instalments of not less than $50.00 each. The defendants had operated a shingle

mill on the premises in question until August 14, 1944, when the mill was virtually destroyed by fire. After the fire there remained on the land a great amount of scrap iron and sheet metal and two large boilers. There was also a large building 30 by 70 feet used as a dry kiln. Much of the land was covered by sawdust eight to ten feet deep. The plaintiffs, being anxious to construct a building on the premises in order to carry on their boat-building operations, caused the following provision to be included in the contract of sale:

> "It is understood and agreed between the first and second parties that the seller is to clear off all debree—consisting of the scrap, boiler, and buildings, but that concrete foundations will not be removed—within ninety days from date of this contract."

It was further provided that:

> "Time and strict performance is of the essence of this agreement * * *."

The defendants within the ninety-day period—which expired on July 4—removed the scrap iron. They also moved several truckloads of the sheet metal to another part of the premises, about 200 yards from the place where defendants thought the plaintiffs intended to build. The record is not clear when the boilers were removed. It is certain, however, that the large dry kiln building was not moved from the premises within the ninety-day period. As a matter of fact, the defendants, in the middle of August, were still engaged in their removal operations. The failure to move the dry kiln particularly deprived the plaintiff purchasers of their right to use the property and prevented them from commencing the building of their boat shop. Plaintiffs planned on burning the sawdust but, since

it extended under a part of the dry kiln, could not do so without endangering such building. Plaintiffs deemed it to be a hazardous thing to build over this deep layer of sawdust as a fire once started therein would have been very difficult to extinguish.

■ There is much testimony about the high water of the Columbia river preventing the vendors from performing their part of the contract in reference to removal of the debris. It is common knowledge that the Columbia river each year commences to rise about the first part of June caused by melting snow in the high mountains along the upper reaches of the river. It is reasonable to assume that defendants "knew the river" and could reasonably have anticipated such condition. During 1946 there was no extraordinary flood stage of the water. If there was danger from high water, it should have been guarded against in the contract. Furthermore, there was no high water to interfere with removal operations during the months of April and May. The plaintiff, Hans Walters, testified, in effect, that on several occasions he urged the defendants to get busy and clear the premises, but nothing was done about the matter.

The most that can be said for the defendants is that they partially performed their part of the contract. In our opinion, there was a failure of the defendants to perform those things of prime importance relating to the very substance of the contract. The rule applicable is thus stated in 1 Black on Rescission and Cancellation (2d ed.) 553, § 198.

"A partial failure of performance of a contract will not of itself give ground for its rescission, but it may do so if it defeats the very object of the contract or renders that object impossible of attainment, or if it concerns a matter of such prime im-

portance that the contract would not have been made if default in that particular had been expected or contemplated, or is such that damages would be a wholly inadequate remedy.''

In the instant case we think there was a substantial failure of performance. Plaintiffs were absolutely deprived of the use of the land by such failure of performance.

■ It is well settled that a vendee, not in default, is entitled to rescind an executory contract for the purchase of land and recover money paid on the purchase price where a vendor has breached a material part of the contract. *Miller v. Beck*, 72 Or. 140, 142 P. 603; 55 Am. Jur., Vendor and Purchaser, §§ 528-540. See notes: 134 A. L. R. 1078, 102 A. L. R. 864, 67 A. L. R. 809. It is not contended that the plaintiff vendees were in default.

■ The provision relative to removal of debris was a dependent covenant which, when breached by the vendors, entitled the plaintiffs to rescind the contract to purchase the land. The covenant in question related to the whole consideration. *First National Bank in Salem v. Morgan*, 132 Or. 515, 284 P. 582, 286 P. 558; 14 Am. Jur., Covenants, Conditions and Restrictions, 487, § 10. As stated in *Dibble v. David Hodes Co., Inc.* 132 Or. 596, 606, 277 P. 820, 286 P. 554:

"The true test, as to whether covenants of a contract are dependent or independent, rests on the intention of the parties, to be determined from the sense of the entire contract rather than from any particular form of expression or the order in which the stipulations occur in the instrument, the order of time in which the intent of the transaction requires performance being controlling. The intention must be gathered from the contract according

to the ordinary rules of construction, on consideration of both its language and subject-matter.''

■ The time essence clause was applicable to both parties to the contract. *Cameron v. Edgemont Investment Co.*, 149 Or. 396, 41 P. (2d) 249. Plaintiffs first requested a thirty-day period in which the land was to be cleared, but defendants were not willing so to contract. Plaintiffs in all probability would not have entered into the contract to purchase the land had they known that the vendors would not substantially perform the covenant around which this controversy centers.

The decree dismissing the suit for rescission is reversed and the cause remanded with directions to enter a decree setting aside the contract and awarding plaintiffs judgment for the amount paid on the purchase price, together with interest thereon. Plaintiffs are entitled to recover costs and disbursements.