Argued January 8, reversed May 22, petition for rehearing
denied June 17, 1975

SHAW, *Appellant, v.* MOBIL OIL
CORPORATION, *Respondent.*
535 P2d 756

110

*David S. Shannon,* Portland, argued the cause for appellant. With him on the brief were Rees C. Johnson and Shannon, Johnson & Sharp, Portland.

*Frank M. Bosch,* Portland, argued the cause for respondent. On the brief were Joss & Bosch, Portland.

DENECKE, J.

The question is, what is the obligation of the plaintiff, a service station lessee and operator, to pay rent to the defendant, Mobil Oil Corporation, the lessor and gasoline supplier of plaintiff?

In 1972 the parties entered into a service station lease and a retail dealer contract. The contract required the dealer to purchase not less than 200,000

gallons of gasoline per year and Mobil to sell to the dealer the amount of gasoline ordered by the dealer, but not more than 500,000 gallons per year.

The lease required the dealer to pay as rent, 1.4 cents per gallon of gasoline delivered, but "no less than the minimum amount * * * specified in said schedule for a calendar month." The schedule specified a minimum rental of $470 per month. The lease further provided: "If at the end of a month, the gallonage payments are less than the minimum rental, Tenant shall pay the deficiency promptly. * * *."

In order for the rent per gallon to equal the minimum rental per month, Mobil was required to deliver 33,572 gallons per month. In July 1973 the dealer ordered 34,000 gallons, but Mobile delivered only 25,678 gallons. The reason for Mobil's delivery of less than the gallonage ordered was that it was complying with a request by the Federal Energy office that it allocate its existing gasoline supply among its dealers. Mobil demanded that the plaintiff dealer pay the minimum rental for July as specified in the lease. Plaintiff brought this declaratory judgment proceeding to have determined its obligation to pay the minimum rental under the circumstances stated. The trial court decided the dealer had to pay the minimum rental.

The retail dealer contract provided: "[T]he amounts so sold and purchased within such limits [minimum of 200,000 and maximum of 500,000 gallons per year] to be those ordered by Buyer [lessee]."

Mobil's District Sales Manager and the trial court both interpreted this clause to mean what it appears to state; that is, that Mobil had a duty to deliver to the dealer as much as the dealer ordered. This duty is at least partially subject to an excuse clause which will be discussed later.

The trial court found that the service station lease and the retail dealer contract "were executed contemporaneously, constituted an integrated contract and are to be construed together." We agree.

The dealer contended in the trial court and contends here that his promise to pay the minimum rental is a dependent promise; that is, it is conditioned upon Mobil's performing its obligation to deliver the quantities of gasoline ordered by the dealer.

■ The law in Oregon on dependent promises, which is similar to the law in other jurisdictions, is stated in *First Nat. Bank v. Morgan,* 132 Or 515, 528-529, 284 P 582, 286 P 558 (1930):

"Whether covenants are dependent or independent is a question of the intention of the parties as deduced from the terms of the contract. If the parties intend that performance by each of them is in no way conditioned upon performance by the other, the covenants are independent, but if they intend performance by one to be conditioned upon performance by the other, the covenants are mutually dependent: 5 Page on Contracts, §§ 2941-2951, et seq.; Williston on Contracts, § 824; *Burkhart v. Hart,* 36 Or. 586 (60 P. 205).

"* * * While there is no fixed definite rule of law by which the intention in all cases can be determined, yet we must remember, as stated by Professor Williston, that, since concurrent conditions protect both parties, courts endeavor so far as is not inconsistent with the expressed intention to construe performances as concurrent conditions. 2 Williston on Contracts, § 835. See also 5 Page on Contracts, § 2948. The necessity of construing these covenants as concurrent in order to avoid gross injustice in the instant case is apparent for without a delivery of the stock the whole consideration for which the note was given must of necessity fail. * * *." *Accord, R. C. A. Photo-Phone v. Sinnott,* 146 Or 456, 459, 30 P2d 761 (1934).

Corbin prefers to label the promise "conditional," rather than "dependent." 3 A Corbin, Contracts 46, § 637 (1960).

In *Associated Oil Co. v. Myers,* 217 Cal 297, 18 P2d 668, 670 (1933), the defendants leased their property to the plaintiff, Associated Oil Co. The lease provided for a rent of 4 cents per gallon of gasoline sold to defendants for resale with a minimum rental of $10 per month. The parties simultaneously entered into a licensing agreement whereby defendants agreed to sell the oil company's products exclusively. The oil company brought this suit to enjoin the defendants from selling other brands of petroleum products from the station. The court held the promises of the parties were dependent and one party's obligation to perform was conditional upon the other party's performance.

In *Rosenthal Paper Co. v. National Folding Box & Paper Co.,* 226 NY 313, 123 NE 766 (1919), the court held a promise to pay a minimum royalty was conditioned upon the performance of another promise by the other contracting party. Seligstein held a patent on a type of box and assigned the exclusive right to manufacture this type of box to the defendant. The agreement provided the manufacturer would pay Seligstein a royalty of $1 per thousand boxes manufactured. The royalty agreement further provided, " '* * * it is expressly understood that the payment by the said * * * [manufacturer] to said Seligstein for the right to manufacture and sell boxes under said letters patent shall not be less than the sum of five hundred dollars ($500.00) for each and every year during the life of this contract.' " 123 NE at 767.

The manufacturer paid Seligstein $1 per thousand boxes manufactured; however, this was not suf-

ficient to equal the minimum rental. Seligstein's assignee brought this action for the difference between the amount paid per thousand boxes sold and the minimum rental. The manufacturer contended it had no obligation to pay the minimum rental because that obligation was conditioned upon Seligstein performing other promises which Seligstein failed to perform.

The court stated the issue:

"We take up first the question whether or not the agreement of the defendant to pay the minimum royalty and the agreements of Seligstein to protect the letters patent from substantial infringement, and to refrain from selling, within the designated territory, any box manufactured under the patent, or any rights for any clothing, millinery, or suit box to any one for the territory were dependent or independent of each other. * * *." 123 NE at 767-768.

The court held the promises were "dependent." It reasoned that the parties must have intended that the manufacturer undertook an obligation to pay a minimum royalty for the exclusive right to manufacture in reliance on Seligstein's promise to maintain the exclusiveness of manufacturer's right by not licensing any one else to manufacture and by not selling such boxes.

■ In the present case we believe it equally apparent that the dealer undertook his obligation to pay a minimum rental in reliance on Mobil's fulfillment of its obligation to deliver the quantity of gasoline ordered by the dealer.

We conclude that the dealer's promise to pay the minimum rental was conditioned or dependent

upon Mobil's delivery of the amount of gasoline order-
ed by the dealer.[1]

The primary contention of Mobil and seemingly
the chief reason for the trial court's decision was that
under a provision of the contract Mobil was excused
from delivering the quantity of gasoline ordered by
the dealer because of a request to Mobil by the Federal
Energy office to allocate its gasoline supply among its
dealers.

Assuming that the contract does excuse Mobil
from performance under these circumstances, never-
theless, the dealer is not obligated to pay the minimum
rental.

The clause Mobil relies upon states:

"Seller shall not be liable for loss, damage or
demurrage due to any delay or failure in perform-
ance (a) because of compliance with any order, re-
quest or control of any governmental authority or
person purporting to act therefor * * *."

■ Interpreting this clause most favorably to Mobil,
its meaning can be no more than that Mobil cannot
be held responsible for breach of contract if it does
not perform its promises because of a government
request.

A party has no obligation to perform a promise
that is conditioned upon the other party's perform-
ance when the other party failed to perform even
though the other party's failure to perform is excused
and is not a breach of contract.

---

[1] The extent to which issues arising out of leases of real
property are governed by the law of contracts rather than the
law of property may not be fully settled. Wright v. Baumann,
239 Or 410, 414, 398 P2d 119, 21 ALR3d 527 (1965); Lindsey v.
Normet, 405 US 56, 87, 92 S Ct 862, 31 L Ed2d 36 (1972); Hicks,
*The Contractual Nature of Real Property Leases,* 24 Baylor L
Rev 443, 445, 453 (1972). The parties have treated this case as if
the law of contracts governs and, therefore, we will do the same
without here deciding the issue.

■ An example of this situation is when the other party fails to perform its promise upon which the promisor's performance is conditioned because of the impossibility of performance. *Eggen v. Wetterborg,* 193 Or 145, 237 P2d 970 (1951), is such a case. Plaintiffs leased the premises from the defendants for use as a gasoline station and tavern. The buildings were destroyed by fire. This court held that the lessees' obligations, including their obligation to pay rent, and the lessors' obligations were dependent upon the existence of the buildings. The court stated:

"* * * When parties enter into a contract on the assumption that some particular thing necessary to its performance will continue to exist and be available for the purpose, and neither party agrees to be responsible for its continued existence and availability, the contract must be regarded as subject to the implied condition that, if before the time for performance, and without the default of either party, the particular thing ceases to exist or be available for the purpose, the contract shall be dissolved and the parties excused from performing it. * * *." 193 Or at 152-153.

Corbin states the rule:

"* * * [I]f one of these promises becomes impossible of performance, the party who made it may be excused from legal duty. His failure to perform is not a breach of contract. But the fact that the law excuses him from performance does not justify him in demanding performance by the other party. * * *." 6 Corbin, Contracts 510-511, § 1363 (1962).

Williston is to the same effect. 6 Williston, Contracts 131, 139, § 838 (3d ed 1962).

The dealer is not obligated to pay the minimum rental although Mobil might be excused from delivering the quantity of gasoline ordered by the dealer.

Reversed.