INTERNATIONAL TEXT-BOOK COMPANY, Appellant, v. ADOLPH ANDERSON, Respondent.

St. Louis Court of Appeals, December 31, 1913.

1. **APPELLATE PRACTICE: Conclusiveness of Trial Court's Finding.** Where, in a case tried to the court without a jury, no instructions were given or requested, the judgment should be affirmed on appeal, if supported by any view of the evidence, as all presumptions and intendments go in aid of it.

2. **CONTRACTS: Validity of Assent: Ignorance of Provisions.** That a party who signed a contract to pay a certain amount

in installments for a course of instruction did not know that it required him to pay such sum, was no defense to an action for that amount, in the absence of fraud, accident, or mistake, although he was a foreigner and unable to read the English language, in which the contract was written, since a person competent to contract is conclusively presumed to know the contents of a contract he signs, which presumption is not rebutted by the fact that he did not read it, for, if he is able to read it, he must do so, and if not, it devolves upon him to have some one else read or explain it to him.

3. ———: ———. That a person who executed a contract for a course of instruction was told by his foreman in the factory where he worked that it was a good thing, was no defense to an action for the stipulated price of the course, where it did not appear that the foreman represented plaintiff or that the contract was secured as a result of duress imposed by the foreman.

4. ———: **Failure to Accept Services: Right of Recovery: Damages.** Where a contract for a course of instruction, to be paid for in installments, provided that the whole amount unpaid should be recoverable from defendant in event of default in the payments, and plaintiff performed part, and repeatedly offered to perform the balance, of the conditions imposed by the contract, but defendant refused to accept the same, plaintiff could recover the full price after all the installments were past due, although defendant had not received the full course of instruction.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

REVERSED AND REMANDED (*with directions*).

*Hall & Dame* for appellant; *David C. Harrington* of counsel.

(1) If a person cannot read the language in which a contract is written, it is as much his duty to procure some person to read and explain it to him before he signs it as it would be to read it before he signed it if he were able to do so, and his failure to obtain a reading and explanation of it is such gross negligence as would estop him from avoiding it on the ground that he was ignoarnt of its contents. 9 Cyc.

390; Stanley v. Gas Light Co., 63 Mo. App. 123; Tate v. Locke, 130 Mo. App. 273; Penn v. Brashear, 65 Mo. App. 24; Mueller v. Kelly, 116 Fed. 545; Railroad v. Belliwith, 83 Fed. 437. (2) The suit at bar is an action to collect a balance due on the amount respondent was to pay appellant, and not to enforce a penalty or liquidated damages. Elec. Co. v. Hat & Fur Co., 94 Mo. App. 543; Cash Register Co. v. Dehm, 139 Mich. 406; 2 Mechem on Sales, sec. 1415; White v. Solomon, 164 Mass. 516; Textbook Co. v. Martin, 117 N. W. 994; Ely v. Dumont, 186 N. Y. App. 552; Safe Co. v. Emanuel, 21 Abb. N. C. 181.

*F. A. C. MacManus* for respondent.

NORTONI, J.—This is a suit for the balance due on a written contract for a course of instruction. The finding and judgment were for defendant and plaintiff prosecutes the appeal.

The balance due on the contract is only forty-six dollars, and the case originated before a justice of the peace but found its way by appeal to the circuit court.

It appears plaintiff is an incorporated company with its home office in the State of Pennsylvania, and engaged in the business of instruction by means of correspondence through the mails. Defendant is a native of Sweden, residing in St. Louis, and, at the time he entered into the contract with plaintiff, was engaged as a shoe worker in one of the factories here. While at his work in the shoe factory, he was approached by plaintiff's agent, who solicited him to contract for a course of instruction. At that time defendant was twenty-two years of age and had resided in this country about nine months. It appears he was endeavoring to learn the English language and could write his name and some other words therein. His foreman, Loftis, told him the proposed course of instruction was a good thing and to sign the contract

for it. Defendant signed the written contract whereby he bound himself to pay fifty-six dollars in installments of five dollars per month for the course in the several English branches therein named. At the same time he paid plaintiff's agent the first installment of five dollars and a month thereafter paid him a second installment in the same amount. The contract was signed by defendant on March 16th and received by plaintiff at its home office a few days thereafter. Immediately, and in due time, plaintiff transmitted to defendant, through the mail, some books for study and instructions how to proceed. Defendant went about the studies but it seems he did not care to pursue that in arithmetic and, therefore, on April thirtieth, or six weeks after signing the contract, wrote plaintiff as follows:

April 30, 1906.

Gentlemen:

I do not care to keep up my arithmetic any longer. What I want to learn most of all is reading, writing and spelling. It is very hard for me to write when I do not know the language. I will still continue to pay my monthly payments promptly, so kindly send my books on grammar.

Yours truly,

Adolph Anderson,

St. Louis, Mo.

Defendant says this letter was written for him by a friend at his instance and request and that he personally signed and mailed it to plaintiff. Answering this letter, plaintiff wrote defendant urging him to continue the course as marked out in the contract, but it seems defendant became dissatisfied and dropped it entirely. He refused to pay further installments on the contract and discontinued the studies, though plaintiff urged him to continue them and offered to perform all of the conditions of the contract on its part. As before said, the contract provides for the

payment of a total sum of fifty-six dollars in monthly installments of five dollars per month and plaintiff paid two of such installments. The contract provides furthermore that, "In case default be made in the payment of any one of said installments, or any part thereof, when due and payable, I hereby agree that the whole amount remaining unpaid shall thereupon, at your option, become due and payable." After the time stipulated for all of the payments had elapsed and defendant's refusal to pay, this suit was instituted by plaintiff for the balance due on the contract—that is, forty-six dollars.

A jury was waived and the case tried before the court. No instructions were given or refused and none were requested, and, of course, if the evidence supports the judgment of the court in any view, such judgment should be affirmed, for all presumptions and intendments are in aid of it. But if it appears from the admissions of defendant that he contracted and owes the debt and that it is unpaid, of course, the judgment may not be sustained. Though the answer pleads that the contract sued upon was procured through fraud, practiced on defendant by plaintiff, there is not a suggestion in the evidence to sustain this charge. No word is given in testimony to the effect that plaintiff's agent made any false representations to plaintiff or practiced any trick or artifice upon him whatever. The substance of defendant's testimony is to the effect that he was at work in the shoe factory when plaintiff's agent approached him and suggested that he take the course of instruction. Defendant testified that the agent "told me that that would teach me; . . . I thought it would be my teaching; that is what I understood." This he reiterates several times; so it is clear defendant knew it was a contract for instruction.

Defendant appears to be a bright and intelligent young man. He was twenty-two years of age at the

time and endeavoring to learn the English language. He had progressed along this line far enough that he could write his name and other English words and figures. Besides writing his name to the contract with his own hand, defendant wrote his address thereunder as follows: "Adolf Anderson, 1447 N. 12th St., St. Louis." He also wrote in the contract opposite the word "Occupation," the English words or term "Shoe Worker." He also wrote his age "22" in our numerals. He admits writing these words and figures in the contract but says this is all he knew how to write at the time. It appears from his own statements that he knew the contract was for instruction to teach him in the English language and that he was to pay five-dollar installments thereon. The following question and answer appear: "Q. You knew you were going to get a course of instructions? A. Yes, sir." Several other portions of his testimony are to the same effect. He paid the first installment at the time and paid the second a month later. But he says he did not know that he was to pay in all fifty-six dollars for the course of instruction. His testimony is, that he did not read the contract himself and no one read it to him, but, as before said, there is not even a suggstion that any misrepresentation touching the matter was made by anyone.

From the testimony of defendant it appears that he understood the contract well enough, except he did not know it required him to pay a total of fifty-six dollars, and he says he signed it because his foreman said it was "a good thing" and told him to sign it. Obviously this constitutes no defense to the suit, for in the absence of fraud, accident or mistake defendant is conclusively presumed to know the contents of the contract and if he could not read it himself it was his duty to have some one read it to him before signing it. The mere fact that Loftis, his foreman in the shoe factory, told him it was a "good thing" and to sign it.

evinces nothing as against the rights of plaintiff here, for it does not appear that he was representing plaintiff in any respect or that the contract was secured as a result of duress imposed on the part of the foreman.

A person who is competent to contract is conclusively presumed to know the contents of the contract he signs and the fact that he does not read it does not rebut this presumption. It is only where fraud, accident or mistake intervenes that one may be relieved in such circumstances. In the absence of fraud, accident or mistake appearing, the law concludes the matter in accord with the terms of the writing the party has signed, for if he can read, he must do so and if not, then it devolves upon him to have another read or explain it for him. [See Penn v. Brashear, 65 Mo. App. 24; Shanly v. Laclede Gaslight Co., 63 Mo. App. 123.] Indeed, there are cases where, though it appears the signing of the contract has been induced by fraud, such fraud may be neutralized and overcome through the negligence of the party signing it if he can read and fails to avail himself of the means of knowledge at hand by reading the contract and ascertaining the truth with respect to the representations on which it is said he relied. [See Tait v. Locke, 130 Mo. App. 273, 109 S. W. 105.] But be this as it may, the defense relied upon here is that defendant did not know the contents of the contract in that it imposed an obligation on him to pay the full sum of fifty-six dollars, because he did not read it before signing, when no misrepresentation of fact whatever appears.

Stress is laid in defendant's testimony on the fact that he was a Swede, but nine months in this country, and not familiar with our language, save that he could read and write a few words, as appears on the contract and in his testimony. The fact that he was a foreigner and unable to read our language avails naught in the case if neither fraud, accident nor mistake appear, for the duty to read obtains in the alter-

native, that is that if he could read he must do so, and if not, he should have some one read or explain the contract to him. Not having done this, defendant is concluded here by his negligence and inattention. [See Muller v. Kelly, 116 Fed. 545, 9 Cyc. 390; Shanly v. Laclede Gaslight Co., 63 Mo. App. 123.]

It appears plaintiff performed and repeatedly offered to perform all of the conditions imposed by the contract on it and all of the installments were past due before the suit was instituted. The contract expressly provides that the whole amount remaining unpaid thereon shall be recoverable from defendant in event he defaulted in his payments. This being true, the fact that defendant has not received the full course of the instruction provided for in no wise impedes the right to recover the full contract price, for parties *sui juris* may make such agreements and assume such obligations touching matters of this character as they see fit to undertake. [See Missouri Edison Elect. Co. v. Steinberg Hat, etc., Co., 94 Mo. App. 543, 68 S. W. 383.] Indeed, it is said by a court of high authority and now accepted as the universal rule: "If a man is willing to contract that he shall be liable for the whole value of a chattel before the title passes, there is nothing to prevent his doing so, and thereby binding himself to pay the whole sum." [See White v. Solomon, 164 Mass. 516, 42 N. E. R. 104, 30 L. R. A. 537. See, also, to the same effect, National Cash Register Co. v. Dehn, 139 Mich. 406; Marvin Safe Co. v. Emanuel, 21 Abbott (N. C.) (N. Y.), 181; International Textbook Co. v. Martin (Neb.), 117 N. W. 994; 2 Mechem on Sales, sec. 1415.] In such cases the contract is regarded as an entire one which vouchsafes the full consideration stipulated for in that the agreement to pay is unqualified and because of this the seller is not restricted to his action for damages as for the breach through the buyer's refusal to ac-

cept. On the contrary, he may sue for and recover the whole sum. [Authorities supra.]

It appearing that a cause of action is not only established but admitted by defendant in his testimony and that no valid defense whatever was made thereto, the judgment should be reversed and the cause remanded with directions to the trial court to enter judgment for plaintiff for the amount sued for. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.