GREEN et al. v. NELSON.

No. 7491. Decided June 19, 1951. (232 P. 2d 776.)

See 65 C. J. S., Names, sec. 9. Trade names, registration of. 52 Am. Jur., Trademarks, Tradenames, etc., sec. 39.

*Hammond & Hammond,* Price, for appellant.

*Mitchell Melich,* Moab, for respondent.

WOLFE, Chief Justice.

Action by the appellants to recover the sum of $190 allegedly due them under a correspondence school agreement which they entered into with the respondent. The trial court entered judgment in favor of the appellants for nominal damages only and from that judgment they prose-

cute this appeal. A cross-appeal by the respondent is also taken from the judgment below.

In December, 1945, the respondent entered into an "enrollment contract" with the appellants whereby he agreed to pay $225 for certain tractor and equipment training to be furnished him by the appellants. The first $75 of the $225 fee to be paid by the respondent was specified in the contract as a "registration fee." He made a payment of $5 at the time the contract was executed and agreed to pay the balance in monthly installments of $15. So far as is pertinent here, the contract specifically provided:

"I have read this agreement and acknowledge receipt of an exact copy of same, which is our entire agreement, and I understand that the service, to which I am entitled is that which is expressed herein, and that no modification or representation, except as herein expressed in writing, will be recognized and no reduction in fees will be made in case of withdrawal. In the event of any one payment becoming delinquent sixty days, without written consent of the Interstate Training Service, the unpaid balance becomes immediately due and payable.

"This Agreement, when accepted by Interstate Training Service at Portland, Oregon, is not subject to revocation. All correspondence, inquiries, payments on balance and matters relating to this training shall be made and directed to Interstate Training Service, Weatherly Building, Portland 14, Oregon."

On the reverse side of the contract was a diagram illustrating the content of the training to be furnished the respondent and also an enumeration of four services which he was entitled to receive: (1) revision service for two years to keep abreast of new developments in the tractor and equipment field, (2) consultation with an instructor at any time, (3) lesson material, tests, return envelopes, etc., (4) placement service after completion of course.

Pursuant to the contract, the respondent paid $30 in addition to the down payment of $5. After the payment of said amount and the receipt of six lessons, he refused to accept any more lessons or to make further payments and repudiated the contract. Thereupon, this action was com-

menced by the appellant to recover $190, the unpaid balance of the $225 fee.

To the complaint, the respondent demurred on the ground that it failed to allege that at the time the appellants entered into the contract with him they had complied with the provisions of section 58-2-1, Utah Code Annotated, 1943. That section provides:

"No person or persons shall carry on or conduct or transact business in this state under an assumed name, or under any designation, name or style, corporate, partnership or otherwise, other than the real name or names of the individual or individuals conducting or transacting such business, unless such person or persons shall file in the office of the county clerk of the county in which the principal place of business is, or is to be, located, an affidafit setting forth the name under which such business is, or is to be, conducted or transacted, and the true full name or names of the person or persons owning, conducting or transacting the same, the location of the principal place of business, with the post office address or addresses of such person or persons. Such affidavit shall be executed by the person or persons so conducting or intending to conduct such business."

Section 58-2-4, U. C. A. 1943, makes the violation of the above section a misdemeanor. The respondent's demurrer was overruled by the trial court and the case proceeded to trial on its merits. After finding that the appellants had offered no evidence of the value of the services they had furnished the respondent nor of the profit they would have made had he not repudiated the contract, the court entered a judgment against him for nominal damages only in the amount of $1.

Considering first the cross-appeal of the respondent, it is contended by him that the lower court erred in overruling his demurrer to the appellants' complaint and in refusing to rule that the contract was void and uneforceable because at the time it was entered into between the parties, the appellants had not filed an affidavit of the nature required by section 58-2-1, U. C. A. 1943. Whether the appellants filed such an affidavit subsequent to the time the

contract was entered into and before this action was tried does not appear from the record. For the purposes of this case, we will assume that they did not.

The cross-appeal must fail. The appellants are co-partners doing business as the Interstate Training Service with their principal place of business in the Weatherly Building in Portland, Oregon. In negotiating for the contract, the respondent dealt with the appellants' agent, one C. M. Hamaker. After the respondent agreed to enter into the agreement, it had to be accepted by the appellants at their office in Portland before becoming binding upon them. It is not alleged nor does it appear from the record that the appellants maintain any place of business whatsoever in the State of Utah. In view of these facts, it is evident that section 58-2-1, U. C. A. 1943, can have no application to the appellants. That section provides that no person shall conduct a business in this state under an assumed name unless he files with the clerk of the county "in which the principal place of business is, or is to be located" an affidavit setting forth the true full name and address of the person conducting the business and the location of the principal place of business. The statute does not purport to apply to persons such as the appellants, conducting business in this state under an assumed name but having no place of business within the state. It would be impossible for such persons to comply with the terms of statute. A case strikingly similar to the instant case in regards to this question is *Swope* v. *Burnham,* 6 Okl. 736, 52 P. 924, 926. There the plaintiffs, co-partners, conducting a mercantile business with its sole place of business in Kansas City, Missouri, carried on business in Oklahoma from their Kansas City headquarters by taking orders through their agents or receiving them through the mail from purchasers directly. In an action brought by the plaintiffs in Oklahoma to recover the possession of a stock of goods, the defendant contended that they had no right to maintain their action because they had

not complied with an Oklahoma statute requiring every partnership conducting business in the territory of Oklahoma under a fictious name to file with the clerk of the district court of the county in which its principal place of business is located, a certificate setting forth the true names of all members of the partnership and their places of residence, and to publish the certificate for four weeks in a newspaper published in that county. It was further provided by statute that any partnership doing business without filing and publishing the required certificate could not maintain any action on account of partnership contracts. It was held by the court that the statute did not apply to a non-resident partnership having no place of business in the territory, although the partnership may do business in Oklahoma, conducting it entirely from an outside location. The court stated that the requirement that the partnership file the required certificate with the clerk of the district court of the county in which its principal place of business is located

"would seem to us to mean that the partnerships which the legislature had in mind when enacting this section were those which had an establishment, a place of business, or one or more places of business, in this territory, for there could be no 'principal place of business' if there was not some place of business, and it certainly was not intended that the 'principal place of business' should be stated in the certificate, if one did not exist in fact. The section does not require that a partnership doing business here shall have a place of business in the territory, as some statutes in principle like this do; but the requirement is that the certificate must be filed in the county where the principal place of business is stated in the certificate to be."

As to the purpose of the statute, the court further remarked:

"The chief purpose of such a statute would seem to be to inform parties doing business with a partnership of persons with whom they were dealing, so as to facilitate action and recovery in case of injury, and it is difficult to perceive the efficacy of such a certificate and publication to promote the purpose of the act, where there is neither person nor property in the territory to serve or seize * * *. At all events, this language requiring the certificate to be filed, and

the publication to be made * * * in the county 'in which its principal place of business is [located]' is in this section, and either makes it mean that the certificate must be filed, and the publication made, whether the partnership has a place of business in the territory or not, as counsel for the plaintiff in error contend, which would nullify this cause of the section; or to mean that every such partnership must have a place of business in the territory, which would be adding to it a most important requirement; or to mean, as we believe and construe it, that every such partnership which has a place of business in this territory must file this certificate in the county of its principal place of business; and this construction gives effect to the language, when all taken together, and to the purpose of the enactment. In our view of the section, it does not apply to a non-resident partnership whose place of business is out of the territory, and where no place of business of the partnership is within the territory, although the partnership may do business in the territory, the business being conducted from an outside location; and, as there is no allegation that plaintiffs have or had a place of business in the territory in the paragraph of the answer which seeks to raise this defense, it was insufficient to bring plaintiffs within the requirements of this section of the statute."

The decision of the court in *Swope* v. *Burnham,* supra, has been followed in the later Oklahoma cases of *Pyle* v. *Hood,* 128 Okl. 239, 262 P. 660 and *W. G. Blanchard & Co.* v. *Ezell,* 25 Okl. 434, 106 P. 960.

Holding as we do that section 58-2-1, U. C. A. 1943, has no application to a person doing business in this state under an assumed name but having no place of business here, it is unnecessary for us to here express any opinion whether the failure to comply with that section, when applicable, renders a contract made by a partnership in its assumed name unenforceable in the courts of this state.

Turning now to the merits of the appeal brought by the appellants, it was contended by them in the trial court and is now contended by them in this court that the respondent's promise to pay the $225 tuition fee is independent, unqualified and unconditional, and that the respondent by his repudiation of the contract and refusal to accept further lessons of instruction or to make payments in the amounts

and at the times specified in the contract, cannot relieve himself of his liability for the full contract price. As heretofore mentioned, the trial court held that because the appellants had offered no evidence of the value of the services they had furnished the respondent or of the profit they would have made had he not repudiated the contract, they were entitled to nominal damages only.

As to the measure of damages in the type of case before us, there is a wide divergence of opinion among the jurisdictions of this country where the question has presented itself for decision. See the annotation at 78 A. L. R. 334. One view, commonly referred to as the Massachusetts rule, is represented by the decision in *International Textbook Co.* v. *Martin,* 221 Mass. 1, 108 N. E. 469, 470, where the court held that the promise of the student to pay all the installments for the right to receive the instruction was an independent promise which was not affected by the student's refusal to proceed any further with the course after about four months of study, and accordingly that the full unpaid balance was due under the contract and could be recovered.

Said the court:

"In case of independent promises the promisor has to perform his promise and if he does not get what he pays for his remedy is by a cross-action."

A similar position was taken in *International Textbook Co.* v. *Anderson,* 179 Mo. App. 631, 162 S. W. 641, 643, where a correspondence school brought an action against a student who had become dissatisfied with the course, abandoned it, and refused to make further payments. In holding that the student was liable for the full amount of the unpaid contract price, the court stated:

"It appears plaintiff performed and repeatedly offered to perform all of the conditions imposed by the contract on it, and all of the installments were past due before the suit was instituted. The contract expressly provides that the whole amount remaining unpaid thereon shall be recoverable from defendant in event he defaulted in his payments. This being true, the fact that defendant has not received

the full course of the instruction provided for in nowise impedes the right to recover the full contract price, for parties sui juris may make such agreements and assume such obligations touching matters of this character as they see fit to undertake."

The same conclusion was reached by the court in *Alexander Hamilton Institute* v. *Calkins*, 112 N. J. Law 170, 170 A. 54, where the court held that because the contract provided that should any part of the fee become due and remain unpaid for sixty days or more, the entire balance may, at the option of the Institute, be declared immediately due and payable, the damages were stipulated in the contract of the parties, and hence the school could recover the total contract price less payments made. In *Sackman* v. *Stephenson*, Sup., 11 N. Y. S. 2d 69, while the question does not appear to have been raised by either party, the court stated that when the student defaulted in making installment payments on the tuition fee, the school's performance of the contract was prevented and that the measure of damages was the total tuition fee less payments made.

A second view taken by courts is represented by *International Textbook Co.* v. *Martin*, 82 Neb. 403, 117 N. W. 994, where the court held that unless the student can show a decrease in the school's expenses brought about by his discontinuance of the course, he must submit to recovery of the full unpaid balance of the contract price for the course. The court noted that in that case there was evidence that the correspondence school employed nearly 400 teachers and remarked that the addition or loss of one student would not increase or diminish the school's expenses to any perceptible degree. The reasoning of that case was followed and adopted by the Supreme Court of Tennessee in *International Correspondence School, Inc.* v. *Crabtree*, 162 Tenn. 70, 34 S. W. 2d 447, 78 A. L. R. 330. In *Alexander Hamilton Institute* v. *Hart*, 180 Wis. 90, 192 N. W. 481, 484, because the student failed to show facts that could reasonably and definitely tend to decrease the school's expenses, the latter

was held to be entitled to recovery of the full unpaid amount. Said the court:

"The organization of a correspondence school and the manner of conducting its business is quite familiar to every one. Enrollments of students are solicited in various parts of the country, and arrangements for the conduct of the school and the employment of instructors and supervisors are accordingly made. No substantial benefit inures to the school by the dropping out of a student; on the contrary, it results in a financial loss."

The court quotes from and follows the Nebraska case discussed above.

A third view is represented by a series of cases decided in Michigan commencing in 1908 with the case of *International Textbook Co.* v. *Schulte,* 151 Mich. 149, 114 N. W. 1031, in which it was held that the school's failure to supply the evidence necessary to the fixing of its damages, where the facts as to what would be the cost of performing the contract were specially within its knowledge, precluded its recovering any more than nominal damages. That case was followed by *International Textbook Co.* v. *Jones,* 166 Mich. 86, 131 N. W. 98, the court rejecting the school's claim of right to recover on the theory of an independent promise. And again in *International Textbook Co.* v. *Marvin,* 166 Mich. 660, 132 N. W. 437, the court reached the same result even though there was a provision in the contract that it was not to be cancelled and that no payment would be refunded, as well as a provision making all remaining installments due upon default in the payment of any one of them. The court explained, however, that it might be found that the school's damages were substantially the amount unpaid upon the contract.

The Michigan rule requiring the school to produce evidence as to the damage which it has actually sustained as a result of the breach of the contract by the student found an interesting application in the case of *Mount Ida School for Girls* v. *Rood,* 253 Mich. 482, 225 N. W. 227, 74 A. L.

R. 1325. There the defendant agreed to pay the plaintiff school $1200 for his daughter's board and tuition for the school year of 1926-1927. The daughter attended the school until the Christmas vacation but did not return for the remainder of the school year. The defendant paid all the installments falling due prior to the time his daughter left school, which totalled $550, but refused to pay the remaining installments which became payable on January 1, 1927 and on February 1, 1927, totaling $650. At the end of the school year, the plaintiff school commenced an action against the defendant to recover the unpaid installments. The Supreme Court of Michigan, again rejecting the contention that the defendant's promise was independent of performance by the plaintiff, held that the school must prove the amount of its damages, and further denied a claim by the school that it should be allowed to recover the full amount of the unpaid installments, less any amount shown by the defendant whereby the school's expenses were lessened by the defendant's renunciation.

In 1946, the question as to the measure of damages recoverable upon the breach of a correspondence school contract presented itself for decision for the first time in any appellate court in Ohio. In a well-reasoned opinion in the case of *Refrigeration and Air Conditioning Institute* v. *Rhine,* 80 Ohio App. 317, 75 N. E. 2d 473, 474, the court chose to follow the Michigan rule. In that case the defendant agreed to receive a course in refrigeration and air conditioning for the total cost of $172. After payment of $23 and the receipt of 39 lessons, he repudiated the contract by refusing to continue the course of study. The contract provided, among other things, that upon the successful completion of the course of study and full payment of the tuition fee, the plaintiff school would furnish the defendant an additional two weeks of intensive shop and laboratory training at its institute in Chicago where he would work on standard equipment under the direction of competent engineers and instructors. The school further agreed to pay for the plain-

tiff's transportation to Chicago from Mt. Vernon, Ohio, and for the return trip, as well as to assist him in procuring employment in the field covered by the course of study.

The court, after noting that there were three schools of thought on the measure of damages recoverable in this type of case, stated that as a general rule in actions for the breach of contract,

"he who seeks damages * * * bears the burden of proof, unless a statute otherwise dictates or knowledge is peculiarly within the possession of the other contracting party who must, in such case, bear the burden of producing it."

It was also declared that in cases of breach of contract courts should compensate but not reward the injured party, and that courts ought to award punitive damages unless they are provided for by law. Further, said the court:

"The plaintiff in the present action is selling service as well as the lessons which it furnishes and later grades. It goes even further than this and agrees that, when the course is completed and paid for, plaintiff will advance money for bus transportation and will give the student two weeks of shop instruction in a standard, equipped shop under experienced instructors. Without doubt those items are figured in arriving at the total contract price. They represent an actual anticipated cash outlay by the institute. The breach saved such contemplated expenditures. The contract figure is indivisible, and, unless plaintiff discloses the cost thereof, application of the Massachusetts rule will compensate it for a loss which it has not and never will sustain.

"* * * Again, it is a matter of common knowledge that the original composition of correspondence school lessons and their printing in bulk are not matters of great expense; and when postage, correction of lessons, secretarial service, stationery and school administration costs are proportioned and added, the total cannot represent any considerable portion of the tuition fee of an individual student. Such facts and figures are within the exclusive knowledge of the school. Why ought it not be required to produce them?"

After pointing out that the two elements of actual damages were the aggrieved party's outlay or expenditure toward performance and loss of profit, the court stated:

"Who is best able to evidence these elements of damages? Surely, not an applicant for a correspondence school course. Such knowledge reposes almost exclusively in the administration office of the school. It ought, therefore, to shoulder the burden of producing that evidence * * * And where the school fails to make such proof, after proving its contracts and defendant's breach coupled with the presumption of sustained damage, the school is entitled to nominal damages only.

"Analyzing the Massachusetts rule, as announced in *International Textbook Co.* v. *Martin,* 221 Mass. 1, 108 N. E. 469, we find it predicated on independent covenants and a father's guaranty. On that theory of contract price, plaintiff grounds its claims. The answer is that such measurement of damages is not in accord with Ohio's compensatory-damage purpose. To hold that the measure of damages is the balance of the contract price is to say that plaintiff may recover not only all its expenditures and expected profit but in addition all future expenditures that will not now be made but which would have had to be made if the contract had been entirely performed. These include bus fare, two weeks vocational training and assistance in procuring a position in industry for defendant. This theory not only compensates plaintiff, but rewards the institute by awarding it compensation for expenditures embraced within the contract price, which will never be made."

Reverting now to the instant case, the precise question presented here for decision appears to be one of first impression in this court. Thus we are free to adopt the rule which comports with our sense of justice.

We are not impressed with the Massachusetts rule. It is unrealistic and not in harmony with the general rule of damages prevailing in other breach of contract cases requiring the party alleging the breach to prove the extent of the damage which he has sustained. The Massachusetts rule in effect requires the student to specifically perform his contract. The criticism of that rule leveled by the Supreme Court of Michigan in *Mt. Ida School* v. *Rood,* supra,

[253 Mich. 482, 235 N. W. 229] is unanswerable. There it was said:

"Appellant's counsel also stress the proposition that 'defendant's promise to pay the contract price is an independent promise,' and therefore the contract price may be recovered without showing plaintiff's performance of the contract itself. At best, as applied to the instant case and others of like character, the assertion that defendant's promise to pay constitutes an independent contract is no more than a legal fiction. Confessedly defendant's promise to pay is the consideration for plaintiff's undertaking. It is as much part and parcel of the contract in suit as is the consideration a part of any simple contract. Cases will be found, some have been cited by appellant, wherein defendant's undertaking is embodies in a separate instrument, for example, a promisstory note. See *International Accountants Society* v. *Maxwell*, 236 Ill. App. 627. In such cases it is literally true that the promisor's undertaking is embodied in an independant, separate contract. The case before us is not such."

True, the Massachusetts court in *International Textbook Co.* v. *Martin*, supra, sought to differentiate the facts of that case from those found in the three Michigan correspondence school cases hertofore mentioned [*International Textbook Co.* v. *Schulte; International Textbook Co.* v. *Jones; International Textbook Co.* v. *Marvin*] on the ground that the enrollment contract specifically provided that upon the default in the payment of any installment, the total unpaid balance would fall due and that no refund would be made in any installment paid. However, it is clear that no such distinction exists in fact since the contract under consideration in *International Textbook v. Marvin*, supra, contained those same provisions.

Nor can the Massachusetts rule be justified on the ground that the contract itself provided for the damages to be recoverable in case of breach by the student. Admittedly, we have held that the parties to a contract may stipulate as to the amount of damages recoverable and that such provisions for stipulated damages will be enforced by the courts according to the parties' intent as evidence by the contract, provided the amount is reasonable when compared

with the actual damages, and not in the nature of a penalty. *Thomas* v. *Foulger,* 71 Utah 274, 264 P. 975. But the difficulty in the instant case is that we have no knowledge whether the amount sought to be recovered by the appellants, viz. the unpaid balance of the tuition fee amounting to $190 is reasonable as compared with the actual damages which they have sustained. We do not know that under the contract the appellants obligated themselves to (1) furnish the respondent with lesson material, tests and return envelopes; (2) allow him to consult with an instructor at any time; (3) furnish him with material for two years to keep him abreast of new developments in the field of his course of study; and (4) assist him in procuring employment after completion of the course. The respondent had pursued the course of study for only a short time before he repudiated the agreement. What expense the breach saved the appellants we have no way of knowing or even approximating and hence only by conjecture could we assume that the $190 is reasonable when compared with the appellant's actual damages.

The rule prevailing in Nebraska, Tennessee and Wisconsin allowing the school to recover the full amount of the unpaid balance of the contract price, unless the student can show savings in the school's expenses brought about by his discontinuance of the course, places a burden upon a student which he can seldom meet. Information as to the cost of performance by the school is peculiarly within its knowledge and if a student is required to produce such evidence he usually must wrest it from the mouths of witnesses friendly to and under the control of the school. The Supreme Court of Ohio in *Allen, Heaton & McDonald, Inc.* v. *Castle Farm Amusement Co.,* 151 Ohio St. 522, 86 N. E. 2d 782, 785, made the following criticism of the rule:

"The rule in cases imposing such burden of proof on defendant appears to be a rule of convenience not justified by reason. That rule apparently originated from a failure to distinguish between proving damages and proving matters asserted in mitigation or re-

duction of the amount of damages. There are authorities holding that the burden of proving matters in mitigation or reduction of the amount of plaintiff's damages rests upon a defendant. 1 Sedgwick on Damages, 9th Ed., 447, Section 227. However, such authorities should not be relied upon as imposing the burden on a defendant to prove one of the essential facts which must be established in order to determine what plaintiff's damages are. There can be no mitigation or reduction of damages until damages are proved."

Thus we conclude that sound reasoning compels the adoption of the Michigan rule in this state. There is no reason why a correspondence school should stand on a more favorable footing than the plaintiff in any other breach of contract action and be relieved of the onus to produce ■ evidence as to the damage sustained by it as a result of the breach by the defendant. In fact, such evidence ought to be relatively simple to ascertain and produce on the part of the school. If we allowed the school to recover the full amount of the unpaid balance without showing its actual loss occasioned by the student's breach, we would be rewarding and not merely compensating it.

The judgment below is affirmed. Costs awarded to the respondent.

LATIMER, McDONOUGH and CROCKETT, JJ., concur.

WADE, Justice (concurring and dissenting).

I concur but I am not prepared to hold that the legislature intended by Section 58-2-1, U. C. A. 1943, to exempt from the provisions of that act persons doing business within this State under an assumed name who have no place of business here. I can think of no purpose or reason for requiring the filing of such an affidavit by a person who has a place of business which would not apply with equal force to a person who is doing business in this state without a place of business. If, as stated by the Oklahoma court, as quoted in the prevailing opinion, the chief purpose of such statutes is to inform the opposing parties of the names of

the persons with whom they are dealing so as to facilitate actions and recovery, the fact that there was no place of business within the state does not seem to be a good reason why an out-of-state firm doing business within this state should not be required to file such affidavit, for a local firm might desire to institute action to enforce an obligation by instituting an action either within or outside of this state in order to reach out-of-state property. Also, a person may own property within this state and may be servable with process here without maintaining a place of business here. So the reasons advanced by the Oklahoma Court for excepting from the provisions of the statute persons without a place of business in the State based on the purposes of the statute seems wholly groundless.

The statute expressly provides that:

"No person or persons shall carry on or conduct or transact business in this state under an assumed name, or under any designation, name or style, corporate, partnership or otherwise, other than the real name or names of the individual or individuals conducting or transacting such business, unless such person or persons shall file"

the required affidavit. There is certainly nothing in this provision which suggests that a person would be exempt from filing such affidavit because he had no place of business within this state. Under that provision, the affidavit is required to be filed by every person carrying on or conducting or transacting business under an assumed name in this state. After that positive requirement that every such person shall file such an affidavit, the statute provides that such affidavit be filed "in the office of the county clerk of the county in which the principal place of business is." From this, the prevailing opinion argues that the affidavit must be filed only in case there is a place of business within the state. The provision on which the prevailing opinion relies does not deal with the question of who shall file such affidavit but only in which county it shall be filed. In using these words, the legislature obviously overlooked the

fact that a person or persons might carry on or conduct or transact business in this state without having a "principal place of business" here. While there seems to be some conflict in these two provisions, I do not think it reasonable to construe this statute to mean that only persons who have a place of business within this state must file such affidavit, much less only persons who have a *"principal* place of business."

It seems to me that the legislature intended just as the statute expressly provides: That no one should carry on or conduct or transact business under an assumed name within this state without filing such affidavit. And where there is a principal place of business within the state, the affidavit should be filed in the county where such place of business is located; otherwise, it should be filed in the county where most of such business is transacted.

I express no opinion on the question as to whether the failure to file such an affidavit would preclude the party from maintaining or defending an action within this state. Here, since the court only awarded nominal damages, I think as a practical proposition it is immaterial what construction we place upon this statute for it does not materially affect the result of this action .

Except as to this point, I concur with the prevailing opinion.