## BINDER ET AL. v. BENSON ET AL.

[No. 260, September Term, 1960.]

*Decided June 9, 1961.*

*Motion for rehearing, or, in the alternative, for modification of opinion, filed June 14, 1961, denied June 22, 1961, and Order of Court filed.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*Walter C. Mylander, Jr.,* and *Charles C. W. Atwater* for the appellants.

*Wilbur R. Dulin* and *George W. Della,* with whom were *Hyman Ginsberg* and *Ginsberg & Ginsberg* on the brief, for the appellees.

HAMMOND, J., delivered the opinion of the Court.

In a suit claiming damages for breach of contract by appellees in refusing to convey land which appellants say was

sold to them, the trial judge, sitting without a jury, found that appellees had not agreed to a material change in the proposed contract offered by appellants, and entered judgment for appellees.

Mr. and Mrs. Robert Benson, and their daughter Kathryn, owned forty-one unimproved lots and four houses, all shown on an approved subdivision plat, and some eighteen adjacent acres, in Anne Arundel County which they had listed for sale. Early in January, 1959, appellants, after inspecting the property, prepared a contract which they signed and delivered to the real estate agent, Martin, for submission to the owners. The proposed contract was undated, called for a purchase price of $21,500, with a down payment of $500.00 and an additional deposit of $2,000 within thirty days of acceptance by the owners. The balance of the purchase price was to be paid within one hundred twenty days of the date of acceptance.

The owners refused this offer and made a counter offer by drawing a line through the proposed purchase price of $21,500 and interlining and initialing a new price of $34,000. They also signed the contract and gave it to Martin to offer to the appellants. Their counter offer was rejected by appellants, who blocked out the $34,000 price on the typewriter and typed in the price of $26,500. Both appellants initialed this change. A paragraph was added on the back of the contract, which provided that $5,000 (the difference between appellants' first offer of $21,500 and their second offer of $26,500) would be secured by a mortgage on the eighteen-acre tract to be executed at settlement for a term of six months with interest at 6%. This change was also initialed by appellants. When this new offer of the appellants was presented to the owners, they again refused it and suggested a counter offer of $29,000.

The real estate agent says that while at the home of the owners, he wrote in with his pen the figures $29,000 on the same, by now somewhat tired contract forms, and that this change was then initialed by the owners. One of the appellants testified that the physical change in price was made by the agent in appellant's office when the contract was brought back. There is no dispute that in the office of one of the appellants the date of January 20, 1959, was inserted in the

proposed contract and the paragraph on the back was stricken through, and a new paragraph was typed there which called for the securing of the balance of $7,500 by a purchase money mortgage to be executed at settlement on the eighteen-acre tract for nine months with interest at 6%. This new paragraph was initialed by the appellants. Also, one more change was made. The provision that the payment of the additional $2,000 deposit was to be made within thirty days of the acceptance of the contract was changed by striking out the word and figure "thirty (30)" and the writing in, almost illegibly, of the word and figure "forty-five (45)." Appellants initialed this change.

When the agent presented the last offer of the appellants to the owners, they initialed the new paragraph on the back (and, if they had not already done so, the $29,000 price) but not the change from thirty to forty-five days. The agent says he forgot to have them initial that change, that it was an oversight. When he returned their copy of the contract to the appellants, he told them he had overlooked having that change initialed.

Appellants, because the change from thirty to forty-five days had not been initialed by the owners and because "the contract wasn't as tidy as it could be," typed four copies of a redraft, a so-called "clean copy," and sent it by the agent to the owners for their signature. When he delivered it he explained about the change from thirty to forty-five days and left the copies with them for signature. The redraft was never signed by the owners. When one of appellants called Miss Benson to find out why, she told him that the contract had been altered without the Bensons' consent. He "tried to explain to her that it must be an oversight, that they either hadn't noticed the forty-five days, or worse that Mr. Martin had neglected to point out the change to them, but we knew that they had gone down there to them with forty-five days in it."

Miss Benson testified that the owners did not know of, and were not told of, the change from thirty to forty-five days until after the clean copies had been left with them and compared with the much changed and initialed draft, and that

they would not have signed a contract with the forty-five day provision. Her mother testified that the owners never agreed to alter the proposed contract from thirty to forty-five days.

The appellants contend the owners manifested assent to their last offer, which included the forty-five day provision, by a final delivery of the writing evidencing and integrating the agreement, and that the owners are bound by all of the provisions of the writing whether they were aware of them, or consciously agreed to them, or not.

It is true that the usual rule is that if there is no fraud, duress or mutual mistake, one who has the capacity to understand a written document who reads and signs it, or, without reading it or having it read to him, signs it, is bound by his signature as to all of its terms. *Ray v. Eurice,* 201 Md. 115, 125. Restatement, *Contracts,* Sec. 70. The same rule applies to a manifestation of assent to a written instrument other than by signature, as by delivery. Restatement, *Contracts,* Sec. 21.

A qualification of the rule is that an apparent manifestation of assent will not operate to make a contract if the other party knows, or as a reasonable person should know, that the apparent acceptor does not intend what his words or other acts ostensibly indicate. Restatement, *Contracts,* Sec. 71(c); 3 Corbin, *Contracts,* Sec. 610; 17 C.J.S. *Contracts,* Sec. 143, p. 497; *Frederich v. Union Electric Light & Power Co.* (Mo.), 82 S. W. 2d 79, 86; *General Electric Supply Corp. v. Republic Construction Corp.* (Ore.), 272 P. 2d 201; *Beatty v. Donahue* (Ky.), 249 S. W. 2d 33; *Lange v. United States* (C. C. A. 4th), 120 F. 2d 886, 889.

The record leaves little doubt that appellants realized that the owners had not assented to the change in the time for making the additional deposit. They had no reasonable right to believe that the delivery to them of three of the contract forms, which in ordinary circumstances would have been a manifestation that a contract already signed had been accepted as offered, was actually such a manifestation. They knew that a critical change had not been initialed as all acceptable changes had been on both sides during the negotiations, that the agent had not called the Bensons' attention to it. Their realization

of the significance of the failure to initial the time of deposit change is indicated by their preparation of the redraft, the clean copy, which they sent to the owners for signature. If appellants had had a binding manifestation of assent from the Bensons, they would have felt no need for the signing of a new contract form containing the forty-five day provision. If housekeeping was the reason for the clean copy redraft, that could have been done when the appellants made their final changes and forwarded them to the owners.

It is established that if negotiating parties intend and understand that a manifestation of assent shall be evidenced only by signature to a writing, their prior oral agreements do not constitute a contract because they were not intended to. *Peoples Drug Stores v. Fenton,* 191 Md. 489, 494; *Eastover Stores, Inc. v. Minnix,* 219 Md. 658, 665. The parties in the case before us negotiated at length by a series of offers and counter-offers, scratched out or interlined on a document already signed. We think their conduct indicates that both buyers and sellers understood and intended that a change in terms proposed since the party to whom it was offered had last seen the contract forms was not to be deemed accepted unless it was initialed, and that there was to be no contract until all changes had been initialed by both sides.

In our view the testimony gave the trial judge full latitude to determine that there had not been those manifestations of mutual assent to all terms and conditions of a proposal requisite for the formation of a contract.

*Judgment affirmed, with costs.*