Darlene M. BENNETT, Appellant,

v.

FUN & FITNESS OF SILVER HILL, INC., A Corporation, Appellee.

No. 80–85.

District of Columbia Court of Appeals.

Submitted Sept. 25, 1980.

Decided Aug. 17, 1981.

Bernard A. Gray, Washington, D. C., for appellant.

Joseph Sperling, Washington, D. C., for appellee.

Before KELLY and FERREN, Associate Judges, and YEAGLEY, Associate Judge, Retired.

FERREN, Associate Judge:

This is an appeal from a trial court order granting summary judgment for plaintiff-appellee, Fun & Fitness of Silver Hill, Inc., against defendant-appellant, Darlene M. Bennett, for breach of a Maryland health club contract. Appellant contends that the trial court (1) abused its discretion in denying her motions to amend her answer and her admissions; (2) erred in ruling there were no genuine issues of material fact as to the validity of the contract; and (3) in any event, applied an incorrect rule of damages in awarding appellee the unpaid contract price. We hold that the trial court abused its discretion in declining to grant appellant's motions to amend her answer and her admissions. Applying the governing Maryland law, we further conclude that appellant raised a genuine issue of material fact as to the enforceability of the contract and that even if the contract is valid, appellee has the burden of proving actual damages. Accordingly, we reverse and remand the case for further proceedings.

## I.  FACTS AND PROCEEDINGS TO DATE

Appellant alleges [1] that on June 13, 1978, she attended a health club in Silver Hill,

---

1. "In reviewing the trial court's summary judgment ruling on the facts, we must be assured not only that no issue of material fact existed but also that the prevailing party was legally entitled to the judgment .... It is the moving party who must demonstrate the absence of a genuine question of fact, ... and any doubt as to the existence of a factual dispute is to be

Maryland, known as Fun & Fitness under a free supervised guest pass. At the end of the day, approximately fifteen minutes before closing, one of appellee's sales representatives took appellant into an office to discuss joining the club. After the discussion, appellant told the salesman that she wanted to think about whether to join. The salesman gave appellant a contract to read and left the room. When he returned, appellant told him that she had not finished reading the papers. The salesman replied that "he would explain everything to [appellant] because they were closing." Appellant then signed a two-page form contract for a 60-month "gold card" membership—a membership sold, according to the contract, "in limited quantities." Appellant also paid $25.00 in cash. The next day, appellant called Fun & Fitness to cancel her membership; she was told she could not do so. Appellant did not make the payments called for under the contract. On April 12, 1979, appellee filed suit.

The contract calls for 24 monthly payments of $41.25. It states that these are installment payments, that the contract is noncancellable, and that the failure of a member to use the facilities will not affect the obligation to pay in full. The contract provides a formula for calculating the sum due if, after joining, a member becomes medically disabled or moves to another area. The contract also provides that if the Fun & Fitness center closes permanently for any reason, the contract will terminate "without any further liability on the part of Purchaser or F & F, including any refunds by F & F for payments prior to the closing of the Exercise Center." The contract states that a prospective member should not sign without reading it in full.

In appellant's original answer to the complaint, she denied defaulting on the contract and further denied owing the amount claimed. After appellee had moved for summary judgment, appellant sought on October 26, 1979, to amend her answer by adding that "[i]n the event that the Court should find that the Defendant has breach-

resolved against the movant." *Turner v. American Motors Gen. Corp.*, D.C.App., 392 A.2d

ed the contract, the Defendant denies that the Plaintiff has suffered damages in the amount claimed or in any amount." Appellant also attempted to amend her admissions by denying the following three statements:

5. That the finance charge rebate as computed according to the Rule of 78, as of April 2, 1979 was $57.75.

. . . .

6. That the late charges for nine (9) months payments at $2.06 totals $18.54.

. . . .

7. That the current balance which remains due and owing to Plaintiff from Defendant is $950.79.

Appellant originally had admitted these facts but, in each instance, had added "only if the contract were valid." Appellee opposed both proposed amendments, arguing that they did not provide any additional ground of defense. Appellee, however, at no point alleged prejudice from the amendments.

The court denied both of appellant's requests to amend. On the same day, the court granted appellee's motion for summary judgment and entered judgment against appellant for $950.79, with interest at 6% per annum from April 2, 1979, plus costs and a 15% attorney's fee.

## II. MOTION TO AMEND ANSWER

■■ Leave to amend a pleading "shall be freely given when justice so requires." Super.Ct.Civ.R. 15(a). Although the decision is a matter of trial court discretion, the policy favoring resolution of cases on the merits creates "a virtual presumption" that a court should grant leave to amend where no good reason appears to the contrary. *Randolph v. Franklin Investment Co.*, D.C. App., 398 A.2d 340, 350 (1979) (en banc) (trial court abused discretion in not allowing defendant to amend answer to include compulsory counterclaim); *accord, Bronson v. Borst*, D.C.App., 404 A.2d 960, 963 (1979). In exercising its discretion, the trial court should consider "the number of such re-

1005, 1006 (1978) (citations omitted).

quests, the length of the pendency of the trial, the number of previous continuances, the existence of bad faith or dilatory motive, the merit of the counterclaim [here, the defense], and the existence of prejudice to the other party." *Id.* (summarizing en banc holding in *Randolph, supra* at 350).[2]

■ In this case, appellant moved to amend her answer to add to her earlier denials (that she had defaulted on the contract and that she owed the amount claimed) a denial that appellee had suffered any damage. The trial court's order denying her motion is not accompanied by a statement of reasons. Applying the *Bronson* analysis ourselves, we conclude that the trial court had no reasonable basis for denying appellant's motion to amend. At the time of the motion, the case had been pending only about six months. *See Bronson, supra* at 963. There had been no continuances. *See id.* Appellee made no allegation of prejudice from amendment. *See id.* at 963–64. Appellee's only reason for opposition was its perception that the amendment added nothing to appellant's defense. Appellant's proposed amendment, however, raised a new and meritorious defense as to damages. *See* Part V. *infra*. We conclude, accordingly, that the trial court abused its discretion in denying appellant leave to amend her answer.

### III. MOTION TO AMEND ADMISSIONS

The rule governing amendment of admissions is similar to the one for amendment of

pleadings. It is designed to further a "just and complete resolution of the merits." *Marshall v. District of Columbia*, D.C.App., 391 A.2d 1374, 1379 (1978). More specifically, a party may withdraw or amend admissions "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." Super Ct.Civ.R. 36(b). "Accordingly, unless a party demonstrates prejudice by reliance upon previous admissions, the trial court can and should extend permission to withdraw or amend." *Marshall, supra* at 1379.

■ Appellant moved to amend her admissions in order to deny that she owed appellee the sums claimed. Appellee never claimed that the proposed amendments to admissions would be prejudicial. Instead, appellee opposed amendment solely on the ground that it was an effort to raise a nonexistent damages issue. Because we conclude that appellant's amended admissions (along with her amended answer) suggest a meritorious damages issue, *see* Part V. *infra*, we hold, absent prejudice to appellee, that the trial court abused its discretion in declining to permit the amendment.

### IV. VALIDITY OF THE CONTRACT

■ We turn now to the merits. The parties agree that Maryland contract law

---

**2.** In *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court interpreted the parallel federal rule, Fed.R.Civ.P. 15(a), in a similar fashion. Holding that the trial court had abused its discretion in not allowing the plaintiff to amend the complaint to state an alternative theory of recovery, the Court stated:

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. . . . If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, re-

peated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.— the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules. [*Foman, supra* at 182, 83 S.Ct. at 230 (citation omitted).]

*See generally* 6 C. Wright & A. Miller, Federal Practice and Procedure §§ 1473, 1484, 1487 (1971 & Supp. 1981).

governs this action. *See* 1 Restatement (Second) of Conflict of Laws §§ 188, 196, 207 (1971).[3] Under that law, on the facts alleged, there is a serious question whether the contract is unconscionable. Thus, we must reverse summary judgment for appellee and remand for further proceedings.

Although Maryland law is not thoroughly developed in this area, it is clear that Maryland no longer follows the absolute rule (in appellee's words) that "[d]efendant is bound by the terms of the contract by signing it, whether she has chosen to read it or not." This rule is qualified: "an apparent manifestation of assent will not operate to make a contract if the other party knows, or a reasonable person should know, that the apparent acceptor does not intend what his words or acts ostensibly indicate." *Binder v. Benson*, 225 Md. 456, 461, 171 A.2d 248, 250 (1961); *see Gagnon v. Wright*, D.C. App., 200 A.2d 196, 198 (1964) (this court applying Maryland law). In addition to this intent issue, moreover, Maryland's intermediate court of appeals has recognized a substantive element of contractual unconscionability. *See McCarty v. E. J. Korvette, Inc.*, 28 Md.App. 421, 428–34, 347 A.2d 253, 258–62 (1975) (contractual limitation of consequential damages for injury to person and property due to breach of warranty on consumer goods is unconscionable under Uniform Commercial Code and common law).

Accordingly, under Maryland law, if—as appellant alleges—appellee's salesman was aware, or reasonably should have been aware, that appellant had not finished reading the contract, it may be unenforceable. *See Binder, supra* 225 Md. at 461, 171 A.2d

at 250; *Gagnon, supra* at 198. Furthermore, if a court were to find the contract terms themselves excessively one-sided—as alleged—this determination, too, could require its voidance as unconscionable. *See McCarty, supra* 28 Md.App. at 428–34, 347 A.2d at 258–62.

It is under unclear what circumstances a Maryland court would decline to enforce a health club services contract on grounds of unconscionability. We therefore must look to other sources to identify the factors a Maryland court presumably would consider. At the outset, however, we note that any evaluation of unconscionability is tied so closely to the facts of a particular case that we are not in a position to say, on the basis of the limited pleadings before us, whether this particular contract is unconscionable. *See Williams v. Walker-Thomas Furniture Co.*, 121 U.S.App.D.C. 315, 320, 350 F.2d 445, 450 (1965). We limit our function here, rather, to identifying the types of considerations the trial court should weigh in resolving this issue on remand. *See id.* at 319–20, 350 F.2d at 449–50.

A contract may be unconscionable either because of the manner in which it was made or because of the substantive terms of the contract or, more frequently, because of a combination of both. J. Calamari & J. Perillo, Contracts § 9–40, at 325 (2d ed. 1977).[4] The central question, therefore, is whether the manner of agreement and/or the terms of the contract are so one-sided as to be unenforceable as a matter of law. *See Patterson v. Walker-Thomas Furniture Co.*, D.C.App., 277 A.2d 111, 114 (1971); *Williams, supra* 121 U.S. App.D.C. at 319,

---

3. If District of Columbia law governed this contract, the statute regulating "health spa sales" would have required the contract to include a provision permitting the buyer to "cancel this contract during the first fifteen days after the contract is made, or after the first fifteen days, if, due to death, illness, injury, or a change of residence, you are unable to use the full membership privileges in this contract." D.C.Code 1978 Supp., § 28–3817(b)(4).

4. In *Williams, supra*, the court characterized unconscionability by reference to two elements: "Unconscionability has generally been recognized to include an absence of meaningful

choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Id.* at 319, 350 F.2d at 449 (footnote omitted). In relying on *Williams, supra*, this court has referred to "the two elements of which unconscionability is comprised." *Patterson v. Walker-Thomas Furniture Co.*, D.C.App., 277 A.2d 111, 114 (1971). We do not understand these two decisions necessarily to require the presence of both elements to establish unconscionability; in an egregious situation, one or the other may suffice. *See generally* Calamari & Perillo, *supra* § 9–40.

350 F.2d at 449; *Industralease Automated & Scientific Equipment Corp. v. R. M. E. Enterprises, Inc.*, 58 A.D.2d 482, 488, 396 N.Y.S.2d 427, 431 (1977); *Educational Beneficial, Inc. v. Reynolds*, 67 Misc.2d 739, 744–45, 324 N.Y.S.2d 813, 819–20 (Civ.Ct.N.Y. 1971). *See generally* Calamari & Perillo, *supra* §§ 9–40, 9–44.

The trial court, accordingly, should consider, first, whether the parties reached an actual agreement on the contract terms. Here, the use of a standardized form contract, supplied by appellee, is a fact substantially bearing on that question. *See, e. g., Williams, supra* 121 U.S.App.D.C. at 317, 319, 350 F.2d at 447, 449; *Weaver v. American Oil Co.*, 257 Ind. 458, 462, 276 N.E.2d 144, 147 (1971); *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 389–91, 161 A.2d 69, 86–87 (1960); Calamari & Perillo, *supra* § 9–40, at 326, § 9–44; 1 Corbin on Contracts § 128, at 554 (1963 & Supp.1980).

This is not to say it is improper to use a form contract. Where one is employed, however, it is important for the court to consider whether the seller identified and explained the terms of the contract, particularly those which might be viewed as unusual or unfair. *See Williams, supra* 121 U.S.App.D.C. at 319, 350 F.2d at 449; *Weaver, supra* 276 N.E.2d at 147–48; Calamari & Perillo, *supra* § 9–44, at 337–38; 1 Corbin, *supra* § 128, at 554. In the present case, appellant alleges that she did not finish reading the contract and that appellee's salesman was aware of that fact. The record to date does not indicate what, if anything, the salesman explained about the contract.

Other sales tactics also have a bearing on the question whether there has been actual agreement. The question is: did appellee exploit appellant's weaker bargaining position or lack of sophistication in legal matters? *See Williams, supra* 121 U.S.App.D.C. at 319, 350 F.2d at 449; Calamari & Perillo, *supra* § 9–44, at 326. Here, appellant alleges the salesman not only was aware she had not finished reading the contract but also rushed her into a decision by saying he would explain the contract details because the center was closing for the day. Those allegations, if true, are relevant to enforceability.

The second line of inquiry concerns the terms of the contract itself. *See Patterson, supra* at 113–14; *Williams, supra* at 320, 350 F.2d at 450; *Campbell Soup Co. v. Wentz*, 172 F.2d 80, 83 (3rd Cir. 1948); *Weaver, supra* at 460, 276 N.E.2d at 146; Calamari & Perillo, *supra* § 9–40, 325–26; 1 Corbin, *supra* § 128, at 551. Outlandish terms may be enough in themselves to make a contract unenforceable. *See* Calamari & Perillo, *supra* § 9–40, at 325. Moreover, one-sided terms which, in some circumstances, could be enforceable may combine in other instances with hard-sell tactics to result in an unconscionable bargain. *See Patterson, supra* at 114. In the present case, we note that if, shortly after entering the contract, appellant had suffered permanent injuries and became unable to use the facilities, the damages provisions, if enforced, would have required her, nonetheless, to pay the entire first-year membership fee of $400.00. These terms contrast with those which provide that if appellee should close its operations, appellant would be entitled to no damages, not even to a refund for payments already made for future use of the facility.

The summary judgment posture of this case makes it impossible for us to decide whether this contract can be enforced. It is clear, however, that appellant raised a genuine issue as to the enforceability of the contract and that there are important issues of fact, as well as law, for the trial court to resolve.

## V. MEASURE OF DAMAGES

Appellant's amendments to her pleadings and admissions suggest an important issue concerning the amount of damages that would be payable to appellee in the event the contract were enforced.

Assuming the contract is valid, we note that under Maryland law appellee would have a right to recover as damages only "the amount of profit which would

have been derived from the agreement had no breach occurred." *Dialist Co. v. Pulford*, 42 Md.App. 173, 179, 399 A.2d 1374, 1379 (1979); *accord, Sergeant Co. v. Clifton Building Corp.*, 47 Md.App. 307, 316, 423 A.2d 257, 262 (1980), *cert. denied* (1981). The contract price is relevant, of course, in that appellee would have a right to be put in as good a position as it would have achieved through performance of the contract. *Dialist Co., supra* 42 Md.App. at 179, 399 A.2d at 1379; *accord, Sergeant Co., supra* 47 Md.App. at 316, 423 A.2d at 262. That price, however, is only the starting point for analysis, for under Maryland law "loss of profits is generally measured by the difference between the contract price and the actual or estimated costs of full performance." *M & R Contractors & Builders, Inc. v. Michael*, 215 Md. 340, 346, 138 A.2d 350, 354 (1958); *see Sergeant Co., supra* 47 Md.App. at 318, 423 A.2d at 263.[5]

The Maryland Court of Appeals has not decided how a court should apply this general rule of damages in a suit for breach of the particular type of service contract at issue here. We find particularly instructive, however, the decision of a Maryland District Court in *Holiday Health Clubs v. Atwell*, Civ.No. 2081–71 (Md.Dist.Ct. for Montgomery County, April 12, 1972). In *Atwell*, given a similar factual situation, the court ruled that where the defendant had contracted for a 24-month health club membership but never used the facilities and refused to pay, the plaintiff health club was not entitled to damages measured by reference to the contract price. Instead, the court followed the reasoning of courts which, in reviewing correspondence school contracts, have held that a school can recover only nominal damages when it fails to furnish evidence of actual damage beyond the fact of an agreed contract price. *See International Textbook Co. v. Schulte*, 151 Mich. 149, 151–52, 114 N.W. 1031, 1032 (1908); *Refrigeration & Air Conditioning Institute v. Rine*, 80 Ohio App. 317, 323–24, 75 N.E.2d 473, 476 (1946); *Green v. Nelson*, 120 Utah 155, 170, 232 P.2d 776, 783 (1951).

In placing on the health club the burden of proving actual damage, the *Atwell* court adopted what has become known as the "Michigan rule." *Green, supra* at 780–81. The court rejected the contrary "Massachusetts rule," which allows recovery of the unpaid contract price, as advocated by appellees, *id.* at 79–80,[6] and the intermediate "Nebraska rule," which allows recovery of the unpaid contract price, subject to the defendant's right to mitigate damages by showing that the breach reduced the plaintiff's costs. *Id.* 120 Utah at 163–64, 232 P.2d at 780.[7] *See generally* Annot., 17 A.L.R.2d 968, 974–78 (1951 & Later Case Service 1973 & Supp.1981).

---

**5.** *Cf. Dialist Co., supra* 42 Md.App. at 179–86, 399 A.2d at 1379–83 (when lost profits would be only speculative, party held entitled to damages based on reliance interest).

**6.** *See Int'l Text-Book Co. v. Martin*, 221 Mass. 1, 6, 108 N.E. 469, 471 (1915); *Int'l Text-Book Co. v. Anderson*, 179 Mo.App. 631, 638, 162 S.W. 641, 643 (1913); *Alexander Hamilton Inst. v. Calkins*, 112 N.J.L. 170, 172, 170 A. 54, 55 (1934).

Massachusetts apparently no longer follows the "Massachusetts rule." In *Dale System, Inc. v. Wichroski*, 320 Mass. 319, 69 N.E.2d 241 (1946), the plaintiff sued for failure to pay for contracted services, but introduced "no evidence as to whether the plaintiff had performed any part of the contract and no evidence as to the time, character, and extent of any breach of it by the defendant...." *Id.* at 323–24, 69 N.E.2d at 243. Distinguishing *Martin, supra*, the court held that in the absence of proof of damages, the plaintiff was not entitled to judgment in the amount of the unpaid contract price, but only to nominal damages of $1.00 (the "Michigan rule"). *Dale System, Inc., supra* at 324, 69 N.E.2d at 243.

The New Jersey courts also apparently have abandoned the strict "Massachusetts rule" of recovery. In *Westmount Country Club v. Kameny*, 82 N.J.Super. 200, 197 A.2d 379 (1964), calling the Massachusetts rule "much criticized," *id.* at 210, 197 A.2d at 384, the court applied the "Nebraska rule," permitting the defendant to prove that as a result of his breach, the plaintiff saved money in not having to perform its half of the bargain and, as a consequence, was not entitled to damages measured by the unpaid contract price. *See id.* at 208–10, 197 A.2d at 383–84.

**7.** *See Int'l Text-Book Co. v. Martin*, 82 Neb. 403, 405, 117 N.W. 994, 994 (1908); *Westmount Country Club, supra* 82 N.J.Super. at 208–10, 197 A.2d at 383–84; *Int'l Correspondence School, Inc. v. Crabtree*, 162 Tenn. 70, 78, 34 S.W.2d 447, 449 (1931).

The standard "lost profits" measure of damages used in Maryland corresponds to the Michigan rule: the burden is on the plaintiff to show actual damages. *See M & R Contractors & Builders, Inc., supra* 215 Md. at 345–49, 138 A.2d at 353–55; *Sergeant Co., supra* 47 Md.App. at 316–318, 423 A.2d at 262–63. We perceive a trend away from the Massachusetts rule *see* note 6 *supra*, and find no reason to anticipate that the highest court of Maryland, in applying the "lost profits" measure of damages in a case such as this, would take the intermediate position of the Nebraska rule and shift the burden onto the defendant to prove that the plaintiff's damages did not amount to the entire unpaid contract price.

We conclude, accordingly, that Maryland would apply the Michigan rule in this case, placing the burden on plaintiff-appellee to prove actual damages. Appellee's mere recitation of the balance due under the contract did not meet its burden of showing that it suffered actual damage. *See M & R Builders & Contractors, Inc., supra* 215 Md. at 345–49, 138 A.2d at 353–55; *Atwell, supra.* The trial court, therefore, also erred in granting summary judgment in the amount of the unpaid contract price.

*Reversed and Remanded.*